IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) ) ) | Case No. 19-34508 (MI) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER TO EXTEND
THEIR EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102).  The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this motion (the "Motion") pursuant to section 1121(d) of the title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1 of the Bankruptcy Local Rules (the "Bankruptcy Local Rules") and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures") for entry of an order, substantially in the form attached hereto, (i) extending for a period of 90 days, to and including March 9, 2020,[2] the period under section 1121(b) of the Bankruptcy Code during which the Debtors have the exclusive right to file a chapter 11 plan of reorganization (the "Exclusive Plan Filing Period") and (ii) extending for a corresponding period, to and including May 8, 2020, the period under section 1121(c)(3) of the Bankruptcy Code to obtain acceptances of such a plan (the "Exclusive Plan Solicitation Period," and, together with the Exclusive Filing Period, the "Exclusive Periods"), without prejudice to the Debtors right to seek further extensions of the Exclusive Periods.[3]

**Preliminary Statement**

1.  The Debtors entered these chapter 11 cases with the goal of stabilizing their business operations, and then proceeding to negotiate a value-maximizing restructuring with their key creditor constituencies. During the early stages of these cases, the Debtors have engaged in extensive efforts to execute a "soft landing" in chapter 11 by achieving operational stability for their business and beginning to take substantive steps towards achieving a reorganization, such as

---

[2] Ninety days from the end of the Debtors' initial Exclusive Plan Filing Period is Sunday, March 8, 2020. Pursuant to Rule 9006(a)(1) of the Bankruptcy Rules, if the last day of a specified time period is a Saturday, Sunday or a legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or a legal holiday. Accordingly, the requested extended Exclusive Plan Filing Period is Monday, March 9, 2020.

[3] Section F of the Complex Case Procedures provides that if a motion complying with Rule 9013-1 of the Bankruptcy Local Rules to extend the time to take any action before the expiration of the period prescribed in by the Bankruptcy Code, the time for taking such action is automatically extended until the Court rules on the motion. Therefore, the Exclusive Periods are automatic extended pursuant to the Complex Case Procedures until the Court rules on the Motion.

initiating the claims resolution process, rejecting certain burdensome contracts and leases, undertaking to develop a revised business plan based on the current, volatile commodity price climate, and investigating potential estate claims. Due in large part to these efforts, the Debtors believe they are now positioned to negotiate a successful restructuring with their key stakeholders in the coming weeks and months of these cases. Specifically, the Debtors expect to begin substantive plan-related negotiations with their key stakeholders, including the official committee of unsecured creditors (the "Committee"), the ad hoc group of holders of secured notes (the "Secured Notes Ad Hoc Group") and the ad hoc group of holders of unsecured notes (the "Unsecured Notes Ad Hoc Group") after the Debtors finalize their revised business plan, which is currently expected to be complete in mid-December. Therefore, more time is currently needed for the Debtors to propose, solicit and, ultimately, confirm a plan of reorganization. Accordingly, the Debtors seek a 90-day extension, the first extension sought by the Debtors, of the Exclusive Periods and submit that such an extension is reasonable and warranted under the circumstances.

2. There is ample cause for the Court to extend the Exclusive Periods. Among other things, these cases, and the Debtors' business, are large and complex. Moreover, the Debtors have engaged in extensive efforts in the administration of these chapter 11 cases and have, in fact, achieved substantial progress towards a reorganization. The activities undertaken by the Debtors to-date in these cases include:

    a. ***Obtaining Critical Financial and Operational Relief***. The Debtors have stabilized their business operations and achieved a soft landing in chapter 11 by obtaining various forms of first and second-day operational relief. This relief includes, but is not limited to, authority to (i) pay prepetition operating expenses and to continue to make such payments in the ordinary course of business, (ii) pay prepetition royalties and proceeds to lessors of mineral and other interests and working interest partners and to continue to make such payments in the ordinary course of business, (iii) continue to perform, on an interim basis, under the Debtors' shared services arrangements with Sanchez Oil & Gas Corporation ("SOG"), and (iv) maintain the use of the Debtors' cash management system. The Debtors are continuing to

      negotiate with their key creditor constituencies and SOG with respect to obtaining final relief with respect to the Debtors' shared services arrangements, with a final hearing currently scheduled for December 12, 2019.

b. ***Vendor Engagement.*** The Debtors have been successful in maintaining their relationships with vendors. Since the Petition Date, the Debtors have actively addressed over 160 vendor inquiries and have entered into approximately 80 trade continuation agreements with vendors to maintain the flow of goods and services to the Debtors without interruption, with more than 10 additional agreements in process. These efforts will continue throughout the chapter 11 cases.

c. ***Contracts and Leases.*** The Debtors are evaluating whether to restructure, replace or terminate their existing leases and contracts using the tools available in chapter 11. The Debtors have already received authority to reject a burdensome contract and a sublease for certain unneeded office space. *See Order Authorizing Rejection of the Cornerstone Master Agreement Effective Nunc Pro Tunc to the Date Hereof* [Docket No. 608]; *Order Authorizing Rejection of the Shell Sublease Agreement Effective Nunc Pro Tunc to the Date Hereof* [Docket No. 592]. The Debtors will continue to assess their lease and contract portfolios to determine whether additional agreements should be rejected or restructured.

d. ***Filing Schedules of Assets and Liabilities and Statements of Financial Affairs***. On September 24, 2019, the Debtors filed schedules and statements of financial affairs for all filing entities. Consistent with ongoing disclosure requirements, on October 4, 2019, the Debtors filed an amended schedule E/F for certain of the filing entities. This was a major undertaking for the Debtors in these chapter 11 cases given the scale of their operations, and involved the filing of thousands of pages of documentation.

e. ***Claims Bar Date.*** The Court has approved a January 10, 2020 claims bar date for creditors of the Debtors. As creditors begin to file proofs of claim, the Debtors expect to evaluate the claims that have been filed against the estates and to begin the process of reconciling such claims.

f. ***Assisting the Committee with Due Diligence Efforts***. The Debtors have expended significant time and effort in assisting the Committee's due diligence work, including providing documents, making the Debtors' advisors and members of the management team available for numerous in-person and telephonic conferences with the advisors to the Committee. The Debtors have received requests relating to hundreds of diligence items and have produced a large volume of documents and information to the Committee in a short period of time. Such diligence efforts remain ongoing as of the time of the filing of this Motion.

g. ***New Business Plan.*** The Debtors are in the process of preparing a revised business plan with their advisors in the face of a volatile climate for commodities prices and expect to complete their revised business plan around mid-December. The business

plan will serve as a basis for plan-related discussions the Debtors will commence thereafter with their stakeholders.

h. ***Commencement of Plan-Related Negotiations with Key Stakeholders.*** The Debtors expect to commence plan-related negotiations with key stakeholders in earnest after finalizing the revised business plan in mid-December.

i. ***Appointment of a Chief Restructuring Officer***. The Debtors, in the exercise of their business judgment, and as guided by the special committee (the "Special Committee") of the board of directors of Sanchez Energy Corporation (the "Board"), and with the consent of the Secured Notes Ad Hoc Group and DIP Lenders, have filed a motion seeking the authority to appoint Mohsin Y. Meghji of M-III Advisory Partners, LP as chief restructuring officer (the "CRO"). The CRO will, among other things, assist in certain aspects of the Debtors' chapter 11 cases (in particular as it relates to SOG and the midstream services provided by Catarina Midstream, LLC and Sanchez Midstream Partners LP ("SNMP")), as well as provide an independent voice within management with respect to the revised business plan and the development and negotiation of a chapter 11 plan of reorganization that maximizes value for all stakeholders. The CRO's proposed scope of services is set forth in more detail in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing (A) Retention of M-III Advisory Partners, LP and (B) Designation of Mohsin Y. Meghji as Chief Restructuring Officer; and (II) Granting Related Relief* [Docket No. 593] (the "CRO Motion") and the *Notice of Filing of Revised Form of Order Granting Debtors' Emergency Motion for Entry of an Order (I) Authorizing (A) Retention of M-III Advisory Partners, LP and (B) Designation of Mohsin Y. Meghji as Chief Restructuring Officer; and (II) Granting Related Relief* [Docket No. 667].

j. ***DIP Financing***. The Court granted interim approval of the Debtors' postpetition financing (the "DIP Financing") on August 14, 2019. Since that date, the Debtors have engaged in extensive and ongoing discussions with their stakeholders regarding postpetition financing and expect to seek final approval of the DIP Financing in the near term.

k. ***Investigation and Lien Analysis.*** Beginning prepetition and continuing after the Petition Date, the Special Committee has been engaged in the investigation of any and all claims or causes of action of the Debtors against SOG, SNMP, or their respective affiliates in connection with prepetition transactions with the Debtors. The Court approved the Special Committee's retention of Ropes & Gray LLP to assist the Special Committee in the investigation as special counsel on November 6, 2019. *Order Authorizing the Retention and Employment of Ropes & Gray LLP as Special Counsel to the Special Committee of the Board of Directors of Sanchez Energy Corporation* [Docket No. 565]. Separately, the Debtors have also been engaged in a comprehensive analysis of the liens and mortgages securing prepetition secured creditors' claims. The Debtors are in the final stages of their analysis and expect that such analysis will inform plan-related negotiations with stakeholders.

l. ***Discovery in Connection with Committee Investigation.*** The Debtors have expended significant resources responding to the Committee's various discovery requests in connection with the Committee's separate and parallel investigation of prepetition transactions and the Debtors' shared services arrangements.

m. ***Litigation & Adversary Proceedings.*** In addition to restructuring efforts, the Debtors have engaged in extensive litigation in the early stages of these chapter 11 cases to prevent substantial interference with the Debtors' chapter 11 process.

   i. ***Gavilan Motion for Relief from the Automatic Stay***. On August 23, 2019, Gavilan Resources, LLC ("Gavilan") filed a motion seeking relief from the automatic stay [Docket No. 222] (the "Gavilan Lift Stay Motion") so that arbitration currently pending between Gavilan and the Debtors (the "Gavilan Arbitration") before the American Arbitration Association regarding the operatorship of the Comanche Assets can proceed to a decision. As explained in greater detail in the First Day Declaration, Gavilan, Debtor SN EF Maverick, LLC ("Maverick") and non-Debtor SN EF UnSub, LP acquired the Comanche Assets from Anadarko E&P Onshore LLC and Kerr-McGee Oil and Gas Onshore LP in March 2017. Pursuant to the terms of the Joint Development Agreement entered into by the parties, Maverick retained operatorship of the Comanche Assets. As set forth more fully in the *Objection of the Debtors to Gavilan Resources, LLC's Motion for Relief from the Automatic Stay to Allow Completion of Arbitration* [Docket No 292] filed by the Debtors on September 12, 2019, allowing the Gavilan Arbitration to move forward would, among other things, cause a substantial drain on the resources of the estates and would materially hinder the Debtors' restructuring efforts. Therefore, the Debtors strongly oppose the Gavilan Lift Stay Motion. The Gavilan Lift Stay Motion has been set for a hearing on December 12, 2019.

   ii. ***Dimension Adversary Proceeding***. On September 5, 2019, Dimension Energy Services, LLC ("Dimension") filed an adversary proceeding (Case No. 19-03606) against SN seeking to remove *Dimension Energy Services, LLC v. Sanchez Oil & Gas Corporation, Sanchez Energy Corporation, and Sanchez Midstream Partners, LP*, Cause No. 2017-85247 (the "State Court Action"), pending in Texas state court. SN filed a motion to remand the proceeding back to the state court on October 7, 2019. [Adv. Docket No. 7]. The Court heard arguments on the motion on November 4, 2019, and issued an order remanding the adversary proceeding. [Adv. Docket No. 14].

   iii. ***Sunbelt Adversary Proceeding***. On October 25, 2019, Sunbelt Tractor & Equipment Company ("Sunbelt") filed an adversary proceeding (Case No. 19-03641) against SN seeking to remove two state court actions. The Debtors and Sunbelt filed an agreed order to remand the actions on November 22, 2019. [Adv. Docket No. 11].

        iv. **_Other Motions for Relief from the Automatic Stay_**. As of the filing of this Motion, in addition to the Gavilan Lift Stay Motion, two other motions have been filed for relief from the automatic stay in these cases.[4] The Debtors oppose all three motions and have filed or in the process of preparing to file objections to each of the motions.

3.      For the foregoing reasons, and the reasons more specifically described and asserted herein, the Debtors submit that a 90-day extension of the Exclusive Periods is appropriate so as to afford the Debtors additional time to attempt to negotiate a consensual plan of reorganization with their key creditor constituencies, and to ultimately propose and solicit such a plan, and to continue the administration of these chapter 11 cases, without the disruption and delay that would be caused if the Court were to deny the Debtors' request to extend the Exclusive Periods.

## Relief Requested

4.      By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto, (i) extending, by 90 days, to and including March 9, 2020, the Exclusive Plan Filing Period, and (ii) extending for a corresponding period, to and including May 8, 2020, the Exclusive Plan Solicitation Period, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## Jurisdiction and Venue

5.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court,

---

[4] *Marco Valdez's Motion for Relief from the Stay* [Docket No. 246]; *Motion for Relief from Automatic Stay* [Docket No. 410].

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The basis for the relief requested herein is section 1121 of the Bankruptcy Code, Rule 9006 of the Bankruptcy Rules, Rule 9013-1 of the Bankruptcy Local Rules and the Complex Case Procedures.

**Background**

8. Sanchez Energy Corporation ("SN"), a publicly-owned Delaware corporation headquartered in Houston, Texas, together with its direct and indirect Debtor and non-Debtor subsidiaries and affiliates, is an independent exploration and production company focused on the acquisition and development of U.S. onshore oil and natural gas resources. The Debtors' principal operations are conducted in Texas, and the Debtors' primary assets are located in the Eagle Ford Shale in South Texas, where they have historically been recognized as an industry-leading operator. In addition to their assets in the Eagle Ford Shale, the Debtors, along with certain of their non-Debtor subsidiaries, also hold certain other producing properties and undeveloped acreage, including in the Tuscaloosa Marine Shale in Mississippi and Louisiana as well as other locations in Louisiana and Texas. The Debtors operate most of their oil and natural gas assets.

9. Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of Cameron W. George, Executive Vice President and Chief Financial Officer of Sanchez Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 16].[5]

---

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

8

10. On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 27]. On August 26, 2019, the Office of the United States Trustee for the Southern and Western Districts of Texas (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 228].[6]

**Basis for Relief**

11. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period thereafter during which only the debtor may solicit votes for a plan. Currently, the Exclusive Plan Filing Period will expire on December 9, 2019, and the Exclusive Plan Solicitation Period will expire on February 7, 2020. The Debtors believe it is prudent to seek an extension of the Exclusive Periods to preserve their exclusive right to file and solicit a plan of reorganization.

12. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause." Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-

---

[6] The U.S. Trustee subsequently filed the *Notice of Reconstituted Committee of Unsecured Creditors* [Docket No. 240] on August 30, 2019.

04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor showed substantial progress had been made in negotiations toward reorganization").

13. Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period:

   a. the size and complexity of the case;

   b. the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

   c. whether the debtor has made progress in negotiations with its creditors;

   d. the existence of good faith progress toward reorganization;

   e. whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

   f. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

   g. the fact that the debtor is paying its bills as they become due;

   h. the amount of time which has elapsed in the case; and/or

   i. whether an unresolved contingency exists.

*See, e.g., In re New Millennium Mgmt., LLC*, No. 13-35719 (LZP), 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (denying motion to terminate exclusivity based on factors for cause).

14. Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g., In re Express*

*One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Adelphia*, but relying on only four as relevant in determining whether there was "cause" to extend exclusivity). Moreover, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied."); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y. 2011) (same).

15. There is ample precedent for an initial extension of exclusivity of 90 days, as the Debtors seek here. *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. July 10, 2018) [Docket No. 1098] (granting initial exclusivity extension of 255 days); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Jan. 8, 2018) [Docket No. 884] (granting an initial exclusivity extension of 180 days); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. Oct. 3, 2017) [Docket No. 840] (granting an initial exclusivity extension of six months); *In re CJ Holding Co.*, No. 16-33590 (DRJ) (Bankr. S.D. Tex. Nov. 3, 2016) [Docket No. 675] (granting an initial exclusivity extension of 120 days); *In re SandRidge Energy Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. Aug 30, 2016) [Docket No. 800] (granting an initial exclusivity extension of four months); *In re Linn Energy LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. Aug 25, 2016) [Docket No. 870] (granting an initial exclusivity extension of six months); *see also In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Sept. 16, 2014) [Docket No. 2063] (granting an initial exclusivity extension of 180 days); *In re Caesars Entertainment Operating Co. Inc., et al.*, No 15-01145 (ABG) (Bankr. N.D. Ill. May 27, 2015) [Docket No. 1690] (granting an initial exclusivity

extension of 180 days). Moreover, the relevant factors strongly favor extensions of the Debtors' Exclusivity Periods.

### I. The Debtors' Chapter 11 Cases are Large and Complex

16. These cases are large and complex. As of the Petition Date, the Debtors had approximately $2.275 billion of outstanding funded debt obligations, consisting of (i) borrowings of approximately $7.9 million in principal amount and a $17.1 million issued and undrawn standby letter of credit, (ii) $500 million in principal amount of 7.25% Senior Secured Notes; (iii) $600 million in principal amount of 7.75% Senior Notes; and (iv) $1.15 billion in principal amount of 6.125% Senior Notes.

17. In addition to a large capital structure, the Debtors also have a complex corporate structure and business operations with thousands of additional stakeholders consisting of vendors, contractual counterparties, working interest partners, and lessors of mineral and oil interests. *See* Tr. of August 13, 2019 Hearing, 25:9:11 ("Mr. Finestone: ….[T]his is one of the most aggressively complex corporate structures that my clients have ever seen."), 34:21-24 ("Mr. Jenkins: …[T]his is a complex case with many complex relationships with very many interested parties."). As a result, there are numerous active parties in interest in these cases, including, among others, the Committee, the two ad hoc groups of holders of the Debtors' secured and unsecured notes and parties involved in litigation against the Debtors. The Debtors have devoted substantial time and resources since the Petition Date to addressing any issues with these parties and will continue to do so.

18. Courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See Express One*, 194 B.R. at 100 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause

is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"). Here, these chapter 11 cases have sufficient size and complexity to warrant an extension of the Exclusive Periods.

## II. The Debtors Have Made Substantial Progress Towards a Reorganization

19. Since the Petition Date, the Debtors have made substantial progress in the administration of these chapter 11 cases, and will in the near term, once the Debtors' new business plan is finalized, begin substantive plan-related negotiations with key stakeholders, including the Committee, the Secured Notes Ad Hoc Group and the Unsecured Notes Ad Hoc Group. The Debtors will continue to work to build consensus during the extended Exclusivity Periods, and the Debtors are hopeful, and expect, that the negotiations with their stakeholders during that period will allow the Debtors to file a confirmable plan of reorganization. Moreover, the Debtors have taken a big step towards the plan development and negotiation process through the appointment of a CRO who will greatly assist in this process. As discussed in detail above, the Debtors have, among other things, since the Petition Date:

    a. maintained financial and operational stability by obtaining critical first and second-day relief;

    b. maintained good relationships with vendors and contractual counterparties and negotiated and entered into numerous vendor/trade continuation agreements;

    c. rejected or are taking steps to reject certain burdensome leases and contracts and continuing to assess the Debtors' lease and contract portfolios;

    d. established a claims bar date and begun the process of identifying and reconciling claims;

    e. appointed an independent CRO to assist in the negotiation and formulation of a plan of reorganization and assist in certain related party matters;

    f. made substantial progress in formulating, and expect to finalize in the near-term, a new business plan that takes into account, among other things, the current and expected commodity price climate;

g.  continued to undertake, through the Special Committee and special counsel to the Special Committee, a comprehensive investigation into any and all potential estate claims relating to prepetition transactions;

h.  engaged in a comprehensive analysis of the liens and mortgages securing prepetition secured creditors' claims; and

i.  worked constructively with the Committee as it conducts diligence with respect to the Debtors' business operations and its own investigation into potential estate claims.

20. The Debtors submit that the progress the Debtors have achieved to date in the administration of the chapter 11 case and steps taken towards negotiating a plan of reorganization with stakeholders constitutes ample cause to extend the Exclusive Periods. *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (Bankr. N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor showed substantial progress had been made in negotiations toward reorganization"); *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del. Dec. 7, 2009), Tr. of Dec. 7, 2009 Hearing, 70:2-4 (extending exclusivity based, in part, on the fact that "there are ongoing discussions, which may or may not result in a global resolution.").

### III. The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusivity Periods

21. The requested extension of the Exclusive Periods is intended to provide the Debtors with a limited amount of additional time, 90 days, to finalize their revised business plan and proceed to the negotiation and formulation of a plan of reorganization that maximizes value for their key economic stakeholders, and is not intended to pressure creditors to accede to the Debtors' demands. This is evidenced by the fact that since the Petition Date, the Debtors have worked constructively with all stakeholders by, among other things, providing significant due diligence so as to ensure that all of their key creditor constituencies are fully informed for purposes of engaging in plan discussions, and have consistently attempted in good faith to build consensus among creditors and other stakeholders during these cases, which have been contentious since the first

day hearing. The Debtors fully intend to continue to work constructively with their key stakeholder groups as these cases enter the critical plan formulation phase.

### IV. The Debtors Are Paying Their Bills as They Come Due

22. As set forth in the Debtors' monthly operating report for August and September 2019 [Docket No. 586], the Debtors have made over $330 million in postpetition disbursements. These significant postpetition disbursements evidence the Debtors' continued payment of their obligations to their vendors, working interest partners, lessors of mineral and other interests and other creditors in the ordinary course of business or as otherwise permitted by orders of the Court.

### V. Relatively Little Time Has Elapsed in These Chapter 11 Cases

23. This is the Debtors' first request for an extension of the Exclusive Periods and comes little more than three months into these cases. Moreover, these cases are still in their early stages, as the Debtors have been required to focus much of their efforts on achieving operational stability, administering these cases, and revising their business plan. The fact that these cases remain at an early stage in the chapter 11 process further supports the requested extensions. *See In re Energy Future Holdings Corp.*, No 14-10979 (Bankr. D. Del. Sept. 16, 2014), Tr. of September 16, 2014 Hearing, 73:21-25 (granting the debtors' request for a six-month extension of exclusivity because cases remained at early stage and shorter extension would lead to debtors having to seek multiple additional extensions of time, which the court would grant assuming the debtors continued to make progress).

### VI. An Extension of the Exclusive Periods is in the Best Interests of All Parties in Interest

24. Extending the Debtors' Exclusive Periods benefits all parties in interest by preventing the drain on time and resources that inevitably occurs when multiple parties with diverging interests vie for consideration of their own respective plans. Moreover, no party has

15

indicated that it would somehow be able to propose an alternative that would in any way benefit, or accelerate, the restructuring process at hand.  To the contrary, the Debtors have and continue to act as an "honest broker" for all parties in interest in these cases and are committed to engaging in good faith plan negotiations with all key stakeholders and working to build consensus.  In addition, the Debtors appointment of an experienced and independent CRO should give parties in interest additional confidence in the Debtors' process.  Therefore, the Debtors submit that all parties benefit from and will continue to benefit from the stability and predictability that the centralized process maintained by the Debtors provides.

25. Lastly, even if the Court grants this Motion and extends the Exclusive Periods, nothing prevents any party from later arguing that cause exists to terminate the Debtors' exclusivity, should such cause arise.  Accordingly, an extension of the Exclusive Periods will not prejudice parties in interest and, in fact, is in the best interests of the Debtors' estates, creditors and all other parties in interest.

## Notice

26. Notice of this Motion has been provided by email, facsimile, or first class mail to: (i) the Office of the United States Trustee for the Southern and Western Districts of Texas; (ii) counsel to the Official Committee of Unsecured Creditors, Milbank LLP; (iii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iv) counsel to Royal Bank of Canada, Thompson & Knight LLP; (v) counsel to the DIP Agent and Notes Trustee, Arnold & Porter Kaye Scholer LLP; (vi) counsel to the Secured Notes Ad Hoc Group, Morrison & Foerster LLP; (vii) counsel to the Unsecured Notes Ad Hoc Group, Quinn Emanuel Urquhart & Sullivan LLP; (viii) counsel to Sanchez Oil & Gas Corporation, Haynes and Boone, LLP; (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Internal Revenue Service; (xi) the United States Securities and Exchange Commission; (xii) the Environmental

Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (xiii) the state attorneys general for states in which the Debtors conduct business; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form of the Order filed with this Motion, granting the relief requested herein and granting such other relief as is just and proper.

Houston, Texas
Dated: December 6, 2019

/s/ Matthew D. Cavenaugh
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Elizabeth Freeman (TX Bar No. 24009222)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4284
Facsimile:  (713) 308-4184
mcavenaugh@jw.com
efreeman@jw.com

*Counsel for the Debtors and*
*Debtors in Possession*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr. (TX Bar No. 00793386)
Lacy M. Lawrence (TX Bar No. 24055913)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile:  (214) 969-4343
mbrimmage@akingump.com
llawrence@akingump.com

- and -

Ira S. Dizengoff (*pro hac vice*)
Lisa Beckerman (*pro hac vice*)
Jason P. Rubin (*pro hac vice*)
Naomi Moss (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile:  (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
jrubin@akingump.com
nmoss@akingump.com

- and -

James Savin (*pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jsavin@akingump.com

*Counsel for the Debtors and*
*Debtors in Possession*

**Certificate of Service**

      I certify that on December 6, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                            */s/ Matthew D. Cavenaugh*
                                            Matthew D. Cavenaugh