**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) Case No. 19-34508 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER TO EXTEND
THEIR EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102).  The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this motion (the "Motion")[2] pursuant to section 1121(d) of the title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1 of the Bankruptcy Local Rules (the "Bankruptcy Local Rules") and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures") required by the United States Bankruptcy Court for the Southern District of Texas (the "Court") for entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) further extending for a period of 90 days, to and including June 8, 2020,[3] the period under Bankruptcy Code section 1121(b) during which the Debtors have the exclusive right to file a chapter 11 plan of reorganization (the "Exclusive Plan Filing Period") and (ii) further extending for a corresponding period, to and including August 6, 2020, the period under Bankruptcy Code section 1121(c)(3) to obtain acceptances of such a plan (the "Exclusive Plan Solicitation Period," and, together with the Exclusive Filing Period, the "Exclusive Periods"), without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.[4]

### Preliminary Statement

1.      The Debtors entered these chapter 11 cases with the goal of stabilizing their business operations, which the Debtors have successfully achieved, and then proceeding to the process of negotiating a value-maximizing restructuring with their key creditor constituencies,

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3]  Ninety days from the end of the Debtors' current Exclusive Plan Filing Period is Sunday, June 7, 2020.  Pursuant to Rule 9006(a)(1) of the Bankruptcy Rules, if the last day of a specified time period is a Saturday, Sunday or a legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or a legal holiday.  Accordingly, the requested extended Exclusive Plan Filing Period is Monday, June 8, 2020.

[4]  Section F of the Complex Case Procedures provides that if a motion complying with Rule 9013-1 of the Bankruptcy Local Rules to extend the time to take any action before the expiration of the period prescribed in by the Bankruptcy Code, the time for taking such action is automatically extended until the Court rules on the motion.  Therefore, the Exclusive Periods are automatically extended pursuant to the Complex Case Procedures until the Court rules on the Motion.

which process has now commenced. Based upon the substantial progress towards a plan of reorganization that has been achieved to date, the further substantial progress that the Debtors are optimistic can be made in the coming months, and the extensive efforts of the Debtors to administer these large and complex cases, the Debtors submit that there is ample cause to further extend the Exclusive Periods.

2.     Following the appointment of Mohsin Meghji as the Debtors' chief restructuring officer (the "CRO") after a highly-contested hearing in December (which order approving the appointment was entered on the last day of the Debtors' initial Exclusive Plan Filing Period),[5] the Debtors' embarked on the intensive and time-consuming process of revisiting and reworking their business plan to account for the current market conditions. This process, which also necessarily required the Debtors' newly appointed CRO to embark on the substantial task of quickly learning about all elements of the Debtors' complex business and operations, consumed substantially all of the months of December and January. At a hearing on January 8, 2020 (the "January 8 Hearing"), the Debtors represented to the Court that they would engage with key creditor constituencies regarding a plan of reorganization once the business plan was complete.

3.     To that end, in late January, after multiple rounds of review by, and discussions among the special committee (the "Special Committee") of the board of directors of Sanchez Energy Corporation ("SN") and the Debtors' advisors, the Special Committee approved the Debtors' business plan, and the Debtors immediately proceeded on January 26, 2020 to share the business plan with each of the official committee of unsecured creditors (the "Creditors'

---

[5] On December 6, 2019, the Debtors filed the *Debtors' Motion for Entry of an Order to Extend Their Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 694]. Pursuant to Section F of the Complex Case Procedures, the Debtors had a bridge extension of the Exclusive Periods until the hearing held on January 8, 2020, where the Court entered the *Order Extending the Exclusive Period for the Debtors to File a Chapter 11 Plan and Solicit Acceptance Thereof* [Docket No. 800] (the "First Exclusivity Extension Order").

Committee"), the advisors for the ad hoc group of secured noteholders (the "Ad Hoc Secured Noteholder Group") and the advisors for the ad hoc group of unsecured noteholders (the "Ad Hoc Unsecured Noteholder Group").  In conjunction with sharing the business plan with the Debtors' key creditor constituencies, in order to facilitate restructuring discussions, the Debtors also shared an illustrative restructuring term sheet which proposed a plan of reorganization framework that has served as the starting point for plan negotiations.

4.       Since providing a business plan and illustrative term sheet to key creditor groups on January 26, the Debtors have held separate, hours-long, in-person meetings with each of the advisors and members of the Creditors' Committee, the advisors to the Ad Hoc Secured Noteholder Group and the advisors to the Ad Hoc Unsecured Noteholder Group to begin the process of soliciting feedback with respect to the proposed business plan, including with respect to the Debtors' optimal drilling program, and commencing plan negotiations.  Subsequent to each of those meetings, the Debtors and their advisors have been working closely with the advisors to each of these creditor constituencies to respond to substantial diligence requests, by providing back-up documents and analysis and holding numerous diligence calls.  Moreover, the Debtors worked with the advisors to the Ad Hoc Secured Noteholder Group and Ad Hoc Unsecured Noteholder Group to negotiate the terms of a confidentiality agreement for the members of their respective groups, which would allow the Debtors to involve the members of those groups directly in restructuring discussions.  As of the date of this filing, eight members of the Ad Hoc Secured Noteholder Group and three members of the Ad Hoc Unsecured Noteholder Group have executed confidentiality agreements, and the Debtors have begun discussions with these parties, including holding a meeting on February 25, 2020 (the "February 25 Meeting") with the Creditors'

Committee, Ad Hoc Secured Noteholder Group and Ad Hoc Unsecured Noteholder Group for purposes of advancing plan negotiations.

5. At the same time, in furtherance of the goal of moving these chapter 11 cases towards confirmation and emergence, the Debtors are well-advanced in drafting a plan of reorganization and the associated disclosure statement so that the Debtors are prepared to meet the current March 9 deadline under their DIP Facility for filing those key documents.[6] However, the Debtors may be required to continue negotiations with creditor constituencies even after a plan is filed, and the Debtors will require more time beyond the current Exclusive Periods to achieve confirmation of their plan. In addition, it is possible that the current March 9 deadline could be extended to allow plan negotiations to continue. Therefore, it is critical that the Debtors obtain a further extension of the Exclusive Periods.

6. The Debtors, of course, could not and did not merely focus on finalizing the business plan during the Exclusive Periods. In addition to the above, the activities undertaken by the Debtors since the Court last authorized an extension of the Exclusive Periods include:

> a. ***DIP Financing Approved on Consensual Basis***. Following extensive negotiations with stakeholders on the Debtors' postpetition financing (the "DIP Financing"), on January 22, 2020 the Court entered the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) To Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 865] granting final approval of the Debtors' DIP Financing. Consistent with their representation to the Court at the January 8 Hearing, the Debtors worked with the DIP Lenders, the Creditors' Committee and the Ad Hoc Unsecured Noteholders Group to reach a consensual resolution of all issues with respect to the Final DIP Order, and the Court was able to enter the Final DIP Order on a consensual basis. With the DIP Financing in hand, the Debtors have the liquidity necessary to administer these

---

[6] Pursuant to the *Amended and Restated Senior Secured Debtor-in-Possession Term Loan Credit Agreement* [Docket No. 865, Ex. 1] (the "DIP Facility"), the Debtors must have a plan of reorganization or plan of liquidation on file with the Court on or before March 9, 2020.

chapter 11 cases, conduct their business in the ordinary course and focus on the formulation of a value maximizing restructuring.

b.  ***Lease Extension Stipulations***.  In order to prevent disruption to the Debtors' day-to-day operations, the Debtors have successfully negotiated stipulations with the landlords for their three office locations for an extension of the deadline under Bankruptcy Code section 365(d)(4) for the assumption or rejection of nonresidential real property leases.  The three stipulations each provide that the time the Debtors have to assume or reject those nonresidential real property leases is extended to the earlier of June 30, 2020 and the effective date of any plan of reorganization.  The Debtors will be filing a motion to approve these stipulations in the near term.

c.  ***Claims Reconciliation Process***.  On January 31, 2020, the Court entered the *Order Approving Omnibus Claims Objection Procedures and Filing of Substantive Omnibus Claims Objections* [Docket No 898], authorizing the Debtors' procedures for reconciling and noticing potential claimants in these chapter 11 cases.  The Debtors, assisted by their advisors, have begun the intensive process of analyzing the hundreds of proofs of claim filed in these chapter 11 cases in order to reconcile such proofs of claim against any submitted evidence, the Debtors' books and records, and available supporting documentation.  The Debtors intend to file their first omnibus objection to certain proofs of claim in the near term in order to begin the process of claims reconciliation.

d.  ***Midstream/Marketing Contract Review and Analysis***.  The Debtors have undertaken a comprehensive review of all of their midstream and marketing agreements for the purpose of determining the optimal midstream and marketing contract program that will enable the Debtors to better maximize the overall value of assets for the benefit of their stakeholders.  The Debtors' analysis of their midstream, marketing and related contract agreements is being undertaken with an eye towards providing for maximum efficiency, value and flexibility in the gathering, transport, processing, and marketing for the hydrocarbon production of both the Debtors, and where applicable, of their working interest partners.

e.  ***Material Oil and Gas Leases***.  In a further effort to maximize the value of the Debtors' estates for the benefit of their stakeholders, the Debtors have had constructive discussions with certain landlords for their material oil and gas leases regarding some potential modifications to the terms of the leases and the Debtors' drilling obligations thereunder.

f.  ***Claims Investigation and Lien Analysis***.  Beginning prepetition and continuing after the Petition Date, the Special Committee, now with the involvement of the CRO, has been engaged in the investigation of any and all potential claims or causes of action of the Debtors against Sanchez Oil & Gas Corporation ("SOG"), Sanchez Midstream Partners, LP ("SNMP"), and/or their respective affiliates in connection with prepetition transactions with the Debtors.  The Court approved the Special Committee's retention of Ropes & Gray LLP as special counsel to assist the Special

Committee in its investigation on November 6, 2019. *Order Authorizing the Retention and Employment of Ropes & Gray LLP as Special Counsel to the Special Committee of the Board of Directors of Sanchez Energy Corporation* [Docket No. 565]. Separately, the Special Committee and the CRO, with the assistance of Jackson Walker LLP, have also been engaged in a comprehensive analysis of the liens and mortgages securing prepetition secured creditors' claims (the "Prepetition Liens"). The Debtors have substantially completed their analysis and have been using their conclusions both to inform plan-related negotiations with stakeholders and prepare a draft complaint should the Debtors determine that it is appropriate to commence an adversary proceeding in respect of the Prepetition Liens. At a hearing on February 20, 2020 in connection with the *Motion of the Official Committee of Unsecured Creditors for Leave, Standing, and Authority to Prosecute Claims on Behalf of the Debtors' Estates and for Related Relief* [Docket No. 875], the Court entered an order maintaining the Debtors' exclusive right to file a complaint challenging the Prepetition Liens until March 10, 2020 (the "Debtors' Complaint Filing Deadline"). If the Debtors fail to file a complaint by the Complaint Filing Deadline, standing to bring a lien challenge will vest in the Creditors' Committee, who must then file a complaint by March 13, 2020. Further, if the Debtors file a motion to settle the estates' claims relating to the Prepetition Liens under Bankruptcy Rule 9019 (a "9019 Motion") by the Debtors' Complaint Filing Deadline, any adversary proceeding will be abated pending the Court's ruling on the 9019 Motion. *See Order Resolving Committee's Standing Motion (ECF No. 875 and Related ECF Nos.)* [Docket No. 984]. The Debtors will be prepared to make any appropriate filings by the court-ordered deadlines.

g. ***Discovery in Connection with Creditors' Committee Investigation***. The Debtors have expended significant resources responding to the Creditors' Committee's various discovery requests and preparing for and attending multiple depositions noticed by the Creditors' Committee in connection with its separate investigation of potential estate claims and causes of action. As of the date of this filing, the Debtors have prepared for and defended the depositions of four current and former officers of SN and are preparing to defend the deposition of SN's executive chairman. The Debtors have also attended, or will attend, depositions of current officers of SNMP and SOG. In preparation for these depositions, the Debtors reviewed thousands of documents for privilege and relevance to the Creditors' Committee's discovery requests, and have made substantial document productions. In total, the Debtors have produced approximately 710,000 pages of documents in response to the Creditors' Committee's discovery requests in connection with its investigation of potential estate claims and causes of action.

h. ***Litigation & Adversary Proceedings***. In addition to restructuring efforts, the Debtors have engaged in extensive litigation since the early stages of these chapter 11 cases to prevent substantial interference with the Debtors' chapter 11 process. These efforts have continued during the Debtors' current Exclusive Periods and include:

i. ***Gavilan Adversary Proceeding***.  On August 23, 2019, Gavilan Resources, LLC ("Gavilan") filed a motion seeking relief from the automatic stay [Docket No. 222] (the "Gavilan Lift Stay Motion") so that arbitration then-pending between Gavilan and the Debtors before the American Arbitration Association regarding the operatorship of the Comanche Assets (the "Comanche Operatorship Dispute") can proceed to a decision.  At a hearing on December 12, 2019, the parties agreed that (a) the Comanche Operatorship Dispute would remain stayed until January 23, 2020, (b) the Comanche Operatorship Dispute would not be resolved through arbitration but would be heard by this Court with a trial to begin on March 9, 2020 at 8:30 a.m. CT, (c) pretrial briefing by the parties would be due on March 2, 2020, and (d) the Court would conduct a pretrial conference on March 3, 2020.  The Court entered the parties' *Stipulation and Agreed Order Consensually Resolving Gavilan's Motion to Modify the Automatic Stay* [Docket. No. 885], and opened an adversary proceeding solely for docket control purposes and administrative convenience, *Gavilan Resources, LLC v. SN EF Maverick, LLC, et al*, Adv. Proc. No. 20-3021.  Pursuant to the Court's order, the stay of the Comanche Operatorship Dispute was lifted on January 23, 2020, after which the parties have been engaged in discovery, including taking depositions, in advance of the upcoming trial.

ii. ***Valdez Motion for Relief from the Automatic Stay***.  As of the filing of this Motion, in addition to the Gavilan Lift Stay Motion, *Marco Valdez's Motion for Relief from the Stay* [Docket No. 246] (the "Valdez Lift Stay Motion") remains pending.  The Debtors filed an objection to the Valdez Lift Stay Motion on October 16, 2019 [Docket No. 471], and the hearing on the Valdez Lift Stay Motion has been reset multiple times.  The Debtors have worked, and continue to work, to reach an agreement with the opposing party to resolve the motion, as the Debtors have done with all such other motions filed during these chapter 11 cases.

iii. ***Debtors' Motion to Proceed in State Court Action and Interlocutory Appeal***.  SN is a plaintiff in a state court action (the "Terra Action") currently pending against Terra Energy Partners LLC and certain individual defendants (collectively, the "Terra Defendants").  On February 18, 2020, the Debtors filed the *Debtors' Motion to Proceed in the State Court Action and Interlocutory Appeal, or in the Alternative, Motion to Lift the Automatic Stay* [Docket No. 975] in order to obtain an order of the Court authorizing (a) the Terra Action and (b) an interlocutory appeal of the Terra Defendant's motion to dismiss claims to proceed, or in the alternative, lifting the automatic stay.  SN asserts claims against the Terra Defendants for, among other things, misappropriation of trade secrets, breach of fiduciary duties and breach of contract, with potential damages in excess of $100 million.

7.     As evidenced by the above activities, the Debtors have made substantial progress in pursuing a value-maximizing restructuring and administering their chapter 11 cases since the Court's initial extension of their Exclusive Periods.  The facts of these cases establish ample cause for an extension of their Exclusive Periods to provide additional time for the Debtors to propose, solicit, and ultimately confirm a plan of reorganization, without the disruption, distraction, significant additional cost and delay that would result if the Court were to deny the Debtors' request to extend the Exclusive Periods.  Accordingly, the Debtors seek a 90-day extension, the second extension sought by the Debtors, of the Exclusive Periods and submit that such an extension is reasonable and warranted under the circumstances.

## Relief Requested

8.     By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto, (i) extending, by 90 days, to and including June 8, 2020, the Exclusive Plan Filing Period, and (ii) extending for a corresponding period, to and including August 6, 2020, the Exclusive Plan Solicitation Period, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## Jurisdiction and Venue

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     The basis for the relief requested herein is Bankruptcy Code section 1121, Bankruptcy Rule 9006, Bankruptcy Local Rule 9013-1 and the Complex Case Procedures.

**<u>Background</u>**

12.     SN, a publicly-owned Delaware corporation headquartered in Houston, Texas, together with its direct and indirect Debtor and non-Debtor subsidiaries and affiliates, is an independent exploration and production company focused on the acquisition and development of U.S. onshore oil and natural gas resources.  The Debtors' principal operations are conducted in Texas, and the Debtors' primary assets are located in the Eagle Ford Shale in South Texas, where they have historically been recognized as an industry-leading operator.  In addition to their assets in the Eagle Ford Shale, the Debtors, along with certain of their non-Debtor subsidiaries, also hold certain other producing properties and undeveloped acreage, including in the Tuscaloosa Marine Shale in Mississippi and Louisiana as well as other locations in Louisiana and Texas.  The Debtors operate most of their oil and natural gas assets.

13.     Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of Cameron W. George, Executive Vice President and Chief Financial Officer of Sanchez Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>") [Docket No. 16].

14.     On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their property as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 27].

On August 26, 2019, the Office of the United States Trustee for the Southern and Western Districts of Texas (the "U.S. Trustee") appointed the Creditors' Committee [Docket No. 228].[7]

### Basis for Relief

15.     Bankruptcy Code section 1121(b) establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period thereafter during which only the debtor may solicit votes for a plan.  Currently, pursuant to the First Exclusivity Extension Order, the Exclusive Plan Filing Period will expire on March 9, 2020, and the Exclusive Plan Solicitation Period will expire on May 8, 2020.  The Debtors believe it is prudent to seek an extension of the Exclusive Periods to preserve their exclusive right to file and solicit a plan of reorganization.

16.     Bankruptcy Code section 1121(d)(1) permits a court to extend a debtor's exclusivity "for cause."  Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs.  *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor showed substantial progress had been made in negotiations toward reorganization").

17.     Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period:

> a.   the size and complexity of the case;

---

[7] The U.S. Trustee subsequently filed the *Notice of Reconstituted Committee of Unsecured Creditors* [Docket No. 240] on August 30, 2019.

    b.   the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

    c.   whether the debtor has made progress in negotiations with its creditors;

    d.   the existence of good faith progress toward reorganization;

    e.   whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

    f.   whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    g.   the fact that the debtor is paying its bills as they become due;

    h.   the amount of time which has elapsed in the case; and/or

    i.   whether an unresolved contingency exists.

*See, e.g., In re New Millennium Mgmt., LLC*, No. 13-35719 (LZP), 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (denying motion to terminate exclusivity based on factors for cause). Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g., In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Adelphia*, but relying on only four as relevant in determining whether there was "cause" to extend exclusivity).

    18.    There is ample precedent to extend the Debtors' Exclusive Periods by 90 days, as the Debtors seek here. *See, e.g., In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. Apr. 9, 2018) (granting second extension of exclusive filing period of approximately 8 months for a total of 18-month exclusive filing period); *In re SandRidge Energy, Inc.*, No. 16-32488 (Bankr. S.D. Tex. Feb. 8, 2017) (granting second extension of exclusive filing period of approximately 10 months for a total 18-month exclusive filing period); *In re Sherwin Alumina Co., LLC*, No. 16-

20012 (Bankr. S.D. Tex. Aug. 23, 2016) (granting second extension of exclusive filing period for approximately 90 days for total 12-month exclusive filing period); *In re UGHS Senior Living, Inc.*, No. 15-80399 (Bankr. S.D. Tex. May 23, 2016) (granting second extension for exclusive filing period for total 9-month exclusive filing period).  Moreover, the relevant factors strongly favor extensions of the Debtors' Exclusive Periods.

## I.     The Debtors' Chapter 11 Cases are Large and Complex

19.     These cases are large and complex.  As of the Petition Date, the Debtors had approximately $2.275 billion of outstanding funded debt obligations, consisting of (i) borrowings of approximately $7.9 million in principal amount and a $17.1 million issued and undrawn standby letter of credit (which was subsequently drawn in December 2019), (ii) $500 million in principal amount of 7.25% Senior Secured Notes; (iii) $600 million in principal amount of 7.75% Senior Notes; and (iv) $1.15 billion in principal amount of 6.125% Senior Notes.

20.     In addition to a large capital structure, the Debtors also have a complex corporate structure and business operations with thousands of additional stakeholders consisting of vendors, contractual counterparties, working interest partners, and lessors of mineral and oil interests.  *See* Tr. of August 13, 2019 Hearing, 25:9:11 ("Mr. Finestone: …[T]his is one of the most aggressively complex corporate structures that my clients have ever seen."), 34:21-24 ("Mr. Jenkins: …[T]his is a complex case with many complex relationships with very many interested parties.").  As a result, there are numerous active parties in interest in these cases, including, among others, the Creditors' Committee, the Ad Hoc Group of Secured Noteholders, the Ad Hoc Group of Unsecured Noteholders, parties involved in litigation against the Debtors, including Gavilan, and GSO, in its capacity as preferred equity holder of SN EF UnSub, LP.  The Debtors have devoted substantial time and resources since the Petition Date addressing numerous issues with these parties and will

continue to do so. As stated above, among other things, the Debtors have (i) submitted a revised business plan to the Creditors' Committee, the Ad Hoc Group of Secured Noteholders, and the Ad Hoc Group of Unsecured Noteholders; (ii) commenced restructuring negotiations; and (iii) substantially completed their investigation of the Prepetition Liens. Negotiations relating to the plan of reorganization have been, and will continue to be, complex and contentious. The Debtors believe that these negotiations will ultimately yield a confirmable, and hopefully fully consensual, plan of reorganization. While the Debtors are positioned to file a plan of reorganization by the March 9 deadline under the DIP Facility, this deadline may be extended or the Debtors may be required to continue negotiations with creditor constituencies even after a plan is filed. Therefore, the Debtors seek additional time in excess of the current Exclusive Periods to allow these negotiations to take place and for the Debtors to attempt to build a consensus among stakeholders.

21.     In addition, the Debtors maintain a complex program for the gathering, transport, processing and marketing of the hydrocarbon production of the Debtors, and in some cases, of their working interest partners, and the Debtors require additional time to explore and, as appropriate, implement certain operational improvements that will benefit the reorganized Debtors and their creditors. Following the commencement of these chapter 11 cases, the Debtors began an extensive review and analysis of the Debtors' existing midstream and marketing agreements with the goal of optimizing their midstream and marketing program in a manner that maximizes the overall value of assets for the benefit of stakeholders. This process, which has various complex legal and operational implications, has continued and intensified during the period following the entry of the First Exclusivity Extension Order, with the goal of providing the Debtors with maximum operational efficiency, value and flexibility, and more time is needed to allow the Debtors to complete this process, in consultation with their stakeholders.

22.     Courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See Express One*, 194 B.R. at 100 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"). Here, these chapter 11 cases have sufficient size and complexity to warrant a further extension of the Exclusive Periods.

## II.     The Debtors Have Made Substantial Progress Towards a Reorganization

23.     Since entry of the First Exclusivity Extension Order, the Debtors have continued to make substantial progress in the administration of these chapter 11 cases and have taken concrete steps toward achieving a plan of reorganization, including following through on their representation to the Court at the January 8 Hearing that they would present a revised business plan and illustrative restructuring term sheet to their key creditor constituencies and begin substantive plan-related negotiations. The Debtors will continue to negotiate with their stakeholders and work to build consensus during the extended Exclusive Periods, and the Debtors believe that the extended Exclusive Periods will give the Debtors the necessary time to achieve confirmation of a plan of reorganization. As discussed in detail above, the Debtors have, among other things, since the Court entered the First Exclusivity Extension Order on January 8, 2020:

    a.  completed and submitted a revised business plan and illustrative restructuring term sheet to key creditor constituencies, and held separate in-person meetings to discuss the revised business plan with advisors and members of the Creditors' Committee, advisors to the Ad Hoc Secured Noteholder Group and advisors to the Ad Hoc Unsecured Noteholder Group;

    b.  organized and held the February 25 Meeting with the Creditors' Committee, Ad Hoc Secured Noteholder Group and Ad Hoc Unsecured Noteholder Group to advance plan negotiations;

    c.  obtained final approval of the Debtors' DIP Financing on a consensual basis, alleviating liquidity constraints and providing capital for the benefit of the Debtors' operations;

d.  continued and intensified their comprehensive review of all midstream and marketing agreements with an eye towards providing the Debtors with maximum efficiency, value and flexibility in the gathering, transport, processing and marketing of hydrocarbons;

e.  continued the investigation of any and all claims or causes of action the Debtors may have against SOG, SNMP, or their respective affiliates in connection with prepetition transactions with the Debtors;

f.  substantially completed their analysis of the Prepetition Liens and have engaged in negotiations with their stakeholders regarding a potential settlement of estate claims relating to the Prepetition Liens in conjunction with plan-related negotiations;

g.  prepared for and defended the depositions of members of the Debtors' current and former officers, and have reviewed and produced hundreds of thousands of pages of  documents, in connection with the Creditors' Committee's various discovery requests;

h.  engaged in discovery and preparations for the March 9 trial on the Comanche Operatorship Dispute;

i.  secured extensions of the time to assume or reject the leases for the Debtors' three office locations until the earlier of June 30, 2020, or the effective date of any plan of reorganization; and

j.  obtained approval of the Debtors' claims procedures and begun the intensive process of analyzing hundreds of proofs of claim filed in these chapter 11 cases.

24.     The Debtors submit that the progress the Debtors have achieved to date in the administration of the chapter 11 cases and the substantial steps taken towards negotiating a plan of reorganization with stakeholders constitutes ample cause to extend the Exclusive Periods.  *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (Bankr. N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor showed substantial progress had been made in negotiations toward reorganization"); *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del. Dec. 7, 2009), Tr. of Dec. 7, 2009 Hearing, 70:2-4 (extending exclusivity based, in part, on the fact that "there are ongoing discussions, which may or may not result in a global resolution.").

### III. The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusive Periods

25.     The requested extension of the Exclusive Periods is intended to provide the Debtors with a limited amount of additional time, 90 days, to continue negotiations and the formulation of a plan of reorganization that maximizes value for their key economic stakeholders, and is not intended to pressure creditors, or hold the creditors hostage in a non-consensual process, to accede to the Debtors' demands.  To the contrary, the Debtors have consistently made efforts to work constructively with their key creditor constituencies to build consensus and will continue to do so during the extended Exclusive Periods.  This is evidenced by the fact that since the entry of the First Exclusivity Extension Order, the Debtors have shared the revised business plan and illustrative restructuring term sheet with the Creditors' Committee, Ad Hoc Unsecured Noteholder Group, and the Ad Hoc Secured Noteholder Group and solicited feedback from each of these parties.  In addition, the Debtors have invested a substantial amount of time and effort in holding hours-long in-person meetings, including the February 25 Meeting noted above, with each of these parties and responding to their substantial diligence requests regarding the business plan and term sheet.  The Debtors fully intend to continue to work constructively with their key stakeholder groups as negotiations continue at the critical plan formulation phase.

### IV. The Debtors Are Paying Their Bills as They Come Due

26.     As set forth in the Debtors' monthly operating reports for August, September, October, November, and December 2019 [Docket Nos. 492, 586, 657, 786, and 905], the Debtors have made over $915 million in postpetition disbursements.  These significant postpetition disbursements evidence the Debtors' continued payment of their obligations to their vendors, working interest partners, lessors of mineral and other interests and other creditors in the ordinary course of business or as otherwise permitted by orders of the Court.

V.     **An Extension of the Exclusive Periods is in the Best Interests of All Parties in Interest**

27.     Extending the Debtors' Exclusive Periods benefits all parties in interest by preventing the drain on time and resources that inevitably occurs when multiple parties with diverging interests vie for consideration of their own respective plans.  The Debtors and their advisors have been, and continue to work, tirelessly to have a plan of reorganization on file by the current deadline under the DIP Facility of March 9, or as soon as possible thereafter if more time is needed by the Debtors and such deadline is extended by the DIP Lenders.  Thereafter, the Debtors will continue to work, as necessary, to build consensus among their creditor constituencies and to achieve a fully consensual confirmation, if possible.  As discussed above, the Debtors have (i) developed and shared with their key creditor constituencies a revised business plan with supporting details; (ii) submitted an illustrative term sheet to these same parties setting forth a plan structure in an effort to encourage negotiations; (iii) met with the principals and/or advisors to their key creditor constituencies about the business plan and provided substantial follow-up diligence; and (iv) held the February 25 Meeting.  Further, the appointment of an experienced and independent CRO has provided interested parties with additional confidence in the Debtors' process, and the Debtors are confident a plan of reorganization will be filed, and confirmed, during the extended Exclusive Periods.

28.     Moreover, no party in interest has yet indicated that it would somehow be able to propose an alternative that would in any way benefit, or accelerate, the restructuring process at hand, as opposed to engaging with the Debtors on a potentially consensual plan of reorganization.  To the contrary, the Debtors have and continue to act as an "honest broker" for all parties in interest in these cases and are committed to continuing to engage in good faith plan negotiations with all key stakeholders and work to build consensus.  Therefore, the Debtors submit that all parties

benefit from and will continue to benefit from the stability and predictability that the centralized process maintained by the Debtors provides.

29.     Lastly, even if the Court grants this Motion and extends the Exclusive Periods, nothing prevents any party from later arguing that cause exists to terminate the Debtors' exclusivity, should such cause arise.  Accordingly, an extension of the Exclusive Periods will not prejudice parties in interest and, in fact, is in the best interests of the Debtors' estates, creditors and all other parties in interest.

### Notice

30.     Notice of this Motion has been provided by email, facsimile, or first class mail to: (i) the Office of the United States Trustee for the Southern and Western Districts of Texas; (ii) counsel to the Official Committee of Unsecured Creditors, Milbank LLP; (iii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iv) counsel to Royal Bank of Canada, Thompson & Knight LLP; (v) counsel to the DIP Agent and Notes Trustee, Arnold & Porter Kaye Scholer LLP; (vi) counsel to the Secured Notes Ad Hoc Group, Morrison & Foerster LLP; (vii) counsel to the Unsecured Notes Ad Hoc Group, Quinn Emanuel Urquhart & Sullivan LLP; (viii) counsel to Sanchez Oil & Gas Corporation, Haynes and Boone, LLP; (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Internal Revenue Service; (xi) the United States Securities and Exchange Commission; (xii) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (xiii) the state attorneys general for states in which the Debtors conduct business; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form of the Order filed with this Motion, granting the relief requested herein and granting such other relief as is just and proper.

Houston, Texas
Dated: February 26, 2020

/s/ Matthew D. Cavenaugh
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Elizabeth Freeman (TX Bar No. 24009222)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4284
Facsimile:  (713) 308-4184
mcavenaugh@jw.com
efreeman@jw.com

*Counsel for the Debtors and*
*Debtors in Possession*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr. (TX Bar No. 00793386)
Lacy M. Lawrence (TX Bar No. 24055913)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile:  (214) 969-4343
mbrimmage@akingump.com
llawrence@akingump.com

- and -

Ira S. Dizengoff (*pro hac vice*)
Lisa Beckerman (*pro hac vice*)
Jason P. Rubin (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile:  (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
jrubin@akingump.com
nmoss@akingump.com

- and -

James Savin (*pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jsavin@akingump.com

*Counsel for the Debtors and*
*Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on February 26, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh