## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTOR'S <u>AMENDED</u>[2] EMERGENCY MOTION (A) AUTHORIZING THE SALE AND ASSIGNMENT OF CERTAIN OF THE DEBTOR'S ASSETS TO WHITE RIVER SPV 2 LLC, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (C) GRANTING RELATED RELIEF

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 18, 2020 AT 8:00 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 404, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN JUNE 18, 2020.**

**PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**

**IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS 832-917-1510. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**

**PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[2] This Amended Motion amends the *Emergency Motion (A) Authorizing the Sale and Assignment of Certain of the Debtor's Assets to White River SPV 2 LLC, (B) Authorizing the Assumption of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (C) Granting Related Relief* filed by the Debtors at ECF 1297 (the "<u>Original Motion</u>").

> ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE ISGUR IS
>
> "JUDGEISGUR". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE
>
> NAME AND CLICK "NOTIFY". HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING. YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:
>
> 1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;
>
> 2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;
>
> 3) SELECTING JUDGES' PROCEDURES AND SCHEDULES;
>
> 4) SELECTING "VIEW HOME PAGE" FOR JUDGE MARVIN ISGUR;
>
> 5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE";
>
> 6) SELECT IN RE SANCHEZ ENERGY CORPORATION, FROM THE LIST OF ELECTRONIC APPEARANCE LINKS; AND
>
> 7) AFTER SELECTING IN RE SANCHEZ ENERGY CORPORATION, FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.
>
> SUBMITTING OUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.

The above-captioned debtors and debtors in possession ("Sanchez Energy" or the "Debtors") state as follows in support of this motion (this "Amended Motion")[3]:

**Relief Requested**

1.  The Debtors seek entry of an order substantially in the form of the proposed order (the "Sale Order") filed with this Amended Motion, (a) approving the sale and assignment (the "Sale")[4] of Debtor SN TMS, LLC's assets in Mississippi and Louisiana (the "Assets") to White River SPV 2 LLC (the "Buyer" or "White River"), as more particularly set forth in the forms of Assignment, Bill of Sale, and Conveyance substantially in the forms attached to the Sale Order as **Exhibits 1-6** (the "Assignments"), free and clear of liens, claims, interests, and encumbrances, as and to the extent set forth in the Sale Order, (b) authorizing the assumption and assignment of

---

[3] Attached hereto is a redline comparing the Original Motion against this, Amended Motion. **Exhibit B**.

[4] The Assets constitute substantially all of Debtor SN TMS, LLC's Assets. The Sale does not include the assets of any of the other Debtors in the above captioned chapter 11 cases.

certain executory contracts and unexpired leases associated with the Assets, and (c) granting certain related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by this Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas.

## Background

5.      Sanchez Energy Corporation ("SN"), a publicly owned Delaware corporation headquartered in Houston, Texas, together with its direct and indirect Debtor and non-Debtor subsidiaries and affiliates, is an independent exploration and production company focused on the acquisition and development of U.S. onshore oil and natural gas resources.  The Debtors' principal operations are conducted in Eagle Ford Shale in South Texas.  The Debtors operate most of their oil and natural gas assets.

6.      Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of Cameron W. George, Executive Vice President and Chief*

*Financial Officer of Sanchez Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [ECF No. 16].

7.      Since commencing these cases, the Debtors continue to operate their businesses and manage their property as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On August 26, 2019, the Official Committee of Unsecured Creditors was appointed [ECF No. 228].[5]

8.      On January 22, 2020, the Court entered the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 865] (the "DIP Order").

9.      On April 30, 2020, the Court entered an *Order Approving the Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* (the "Confirmation Order") [ECF No. 1212] confirming the Debtor's Second Amended Plan of Reorganization of Sanchez Energy Corporation Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") [ECF No. 1198].

10.      A status conference on the Original Motion was held on June 4, 2020 at 5:00 p.m. in the above styled court (the "Court"). After the status conference, the Court set a hearing on June 6, 2020 at 11:15 a.m. At the June 6, 2020 hearing, the Debtors announced their intent to proceed with a two-step transaction. The first step would proceed with certain non-debtor entities and White River. The second step would concern White River acquiring certain Assets and

---

[5]     The U.S. Trustee subsequently filed the *Notice of Reconstituted Committee of Unsecured Creditors* on August 30, 2019 [ECF No. 240].

Assignments from Debtor SN TMS, LLC, subject to the Court's approval at a later time. The Court then continued the hearing on the Original Motion to June 18, 2020 at 8:00 a.m. with the understanding the Debtors would file the Amended Motion. The Sale in this Amended Motion embodies the second step of the two-step transaction announced on the record during the June 6, 2020 hearing.

### The Sale and Assignment

11.     Debtor SN TMS, LLC seeks to sell and assign the Assets to White River.  White River will assume all plugging and abandonment liability in connection with the Assets.  This Sale relieves the Debtors and their estates of significant plugging and abandonment liabilities.  Given the market for oil and gas assets and the significant volatility in the market, these sales are beneficial to the estates and the Debtors' stakeholders.  Reducing the estates' plugging and abandonment liabilities through this Sale is an exercise of the Debtors' business judgment and will maximize value to stakeholders.  The Assets consist primarily of non-producing leasehold acreage, and six (6) wellbores. When the Assets are combined with those assets and contracts acquired by the Buyer in step one of the transaction, there are approximately 225 wells and six (6) wellbores being acquired by White River. All of these wells and wellbores have attendant future plugging and abandonment obligations.  The Debtors' experience in the Tuscaloosa Marine Shale Play confirms that the cost to plug each of these wells and wellbores will range from $25,000 to $75,000 each. Taking the median of this range, the Debtors project the assumption of the plugging and abandonment obligations equates to at least $11,550,000 in consideration being provided by White River. No additional cash consideration is being paid in by White River in the Sale.[6]

---

[6] While the Original Motion contemplated cash consideration as part of the Sale, that term changed as result of the two-step transaction. As part of step one of the transaction, White River did pay cash consideration to certain non-debtor entities for certain of their assets.

12.     The Assets are more fully described in Section 1.1 of the Assignments, and include all of Debtor SN TMS, LLC's rights, title, and interest in and to the Assets including all leases, wells, surface agreements, equipment, certain vehicles, and the produced hydrocarbons, all to the extent set forth in the applicable Assignments.

**Basis for Relief**

**A.     The Proposed Sale and Assignment is Fair and Consistent with the Debtors' Reasonable Business Judgment.**

13.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Code § 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate; however, bankruptcy courts in this District and elsewhere have required that the authorization of such use, sale, or lease of property of the estate out of the ordinary course of business be based upon sound business justification of the trustee or debtor in possession.  *See, e.g., Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."

14.     Once the debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  *In re S.N.A. Nut Co.*, 86 B.R. 98 (Bankr. N.D. Ill. 1995).

15.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-565 (8th Cir. 1997).

16.     The Debtors have a sound business justification for selling and assigning the Assets to White River under the terms of the Assignments.  These assets are of relatively low value, are located outside the Debtor's core area of operation and have significant plugging and abandonment liabilities associated with them.  The Debtors saw a dramatic decline in the value of their oil and gas assets during the pre-confirmation period of these cases.  They now seek to preserve as much value as possible for all stakeholders.  Reducing significant plugging and abandonment liability is a sizeable value to the estates.  If the Debtors are not allowed to sell and assign the Assets, the Debtors' estates will be deprived of the opportunity to shed the plugging and abandonment liabilities associated with the Assets.

17.     The Debtors determined that the proposed Sale is in the best interest of the estates and the creditors and is consistent with the Debtors' reasonable business judgment.

**B.      The Proposed Private Sale is Appropriate under Bankruptcy Rule 6004.**

18.     Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363.  Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).  *See In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) (noting that "there is no prohibition against a private sale or against a sale to insiders; and there is no requirement that the sale be by public auction") (quoting *In re Woodscape L.P.*, 134 B.R. 165, 174 (Bankr. D. Md. 1991)); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *88 (Bankr. D. Del. Aug. 15, 2007) ("[s]ales of property rights outside the ordinary course of business may be by

private sale or public auction."); *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 (N.D. Ill. 1988) ("[s]ection 363(b) is not limited to sales involving competitive bidding. Bankruptcy Rule 6004, which sets forth procedures for section 363(b) transfers, expressly provides for private sales.").  Courts have held that a debtor has broad discretion to determine the manner in which its assets are sold.  *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del 1981).  A debtor may conduct a private sale if a good business reason exists. *See In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998).

19.     The proposed private Sale to White River is appropriate in light of the facts and circumstances of this chapter 11 case.  The Assets pose significant plugging and abandonment liabilities for the estates and it is in the Debtors' best interest to relieve the estates of that burden. It is unlikely that the Debtors would be able to negotiate better terms to sell these Assets.

20.     The transaction with White River allows the Debtors to maximize the value received for the assets being sold and provides a significant benefit to the Debtors' estate.  The Debtors considered and analyzed all reasonably available options in connection with the Sale of the Assets, considered the reasonable view of its creditors, and determined that the terms and conditions set forth in the Assignment, and the certainty of closing, are all fair, reasonable, and constitute the highest or otherwise best value obtainable in exchange for the Assets under the circumstances presented.

21.     The Debtors request that the Court approve the proposed private Sale of the Assets in accordance with the Assignment.

### C.     The Buyer is Entitled to the Protections of 11 U.S.C. § 363(m).

22.     Section 363(m) of the Bankruptcy Code provides, in pertinent part:

8

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

23.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

24.     White River is a good faith purchaser as the term is used in 11 U.S.C. § 363(m) and, as such, is entitled to the protections of 11 U.S.C. § 363(m).  The Sale of the Assets is proposed and the Assignment will be consummated in good faith in that the transaction represents an agreement providing for the exchange of good and equivalent consideration.  The Sale is the product of extensive arm's length negotiations between the Debtors and White River.  The result is market terms for the Assignment.  Thus, the Sale to White River is in good faith.

### D.     The Court May Approve the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(f).

25.     The Court may authorize the Sale of the Assets free and clear of all liens, claims, and encumbrances.  The DIP Lenders support the sale. Debtors do not expect any prepetition secured party to object.

26.     Section 363(f) of the Bankruptcy Code allows the Debtors to sell the Assets free and clear of any interest in the Assets if:

> (1)     Applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     Such entity consents;
>
> (3)     Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     Such interest is in a bona fide dispute; or

(5)     Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5).

27.     The Debtors request that the Sale to Buyer be free and clear of all liens, claims, interests, and encumbrances.  In evaluating such a sale, a court must balance the need for flexibility with the concern of affected creditors.  *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989).  The Court must also determine that creditors' lien rights are adequately protected and that the offered price is the highest price and/or best terms obtainable under the circumstances in the particular case.  *Id.*; *In re Beker Indus. Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986).

28.     White River will not close the Sale if the Assets are not sold free and clear under the Sale Order.  Further, the Debtor satisfies section 363(f)(2) of the Bankruptcy Code because the Prepetition Secured Parties consent to the Sale of the Assets to the Buyer, and the Debtor does not expect any other prepetition secured party to object to the Motion.  Any lien, claim, interest, or encumbrance, that exists on the Assets will be adequately protected by attachment to the net proceeds of the Sale (if any) in the same priority that existed on the Petition Date, subject to any claims and defenses that the Debtor may possess with respect thereto, and/or the Debtor will obtain the consent of the party holding the lien, claim, or encumbrance.  The Debtors further request that any holder of a lien, claim, interest, or encumbrance that fails to timely object to the Sale be deemed to have consented to the Sale free and clear of their purported interest or lien under § 363(f)(2). [7]

---

[7] As outlined in the Notice section below, the Debtor will provide notice of this Motion to all Persons known or reasonably believed to have asserted a lien or encumbrance on any of the Assets.

29.     The Debtors request that the Assets be sold to White River free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching to the proceeds of the Sale of the Assets (if any).

**E.      The Assumption and Assignment of the Assumed Contracts Should be Approved.**

(1)     The Assumption and Assignment of the Assumed Contracts (as defined below) Reflects the Debtor's Reasonable Business Judgment.

30.     Sections 365(a) and (b) of the Bankruptcy Code authorize a debtor-in-possession to assume executory contracts or unexpired leases subject to the court's approval, and requires a debtor-in-possession to satisfy certain requirements at the time of assumption.  *See* 11 U.S.C. § 365(a) ("subject to the court's approval, [a debtor] may assume or reject any executory contract or unexpired lease of the debtor").  To assume an executory contract or unexpired lease, the Debtor must meet certain requirements under § 365(b), including, curing any defaults under such executory contract and unexpired leases and providing adequate assurance of future performance. *See* 11 U.S.C. § 365(b).

31.     The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.  *See Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 524-25 & n. 5 (5th Cir. 2004).

32.     Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.  Bankruptcy Code § 365(f) specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable.  See 11 U.S.C. § 365(f)(1); *see also In re Amidee Capital Grp., Inc.*, No. 10-20041, 2010 WL 5141276, at *5 (Bankr. S.D. Tex. Oct. 7, 2010) (treating such prohibitions or limitations as null and void under section 365(f). Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract

11

. . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction."  *See In re PRK Enters., Inc.*, 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999) (internal quotations omitted).  Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.

33.     The contracts to be assumed (the "<u>Assumed Contracts</u>") are set forth in <u>Exhibit A</u> attached hereto.  The Assumed Contracts are necessary to operate the Assets and, as such, the Assumed Contracts are essential to inducing the highest or otherwise best offer for the Debtors' assets.  The Debtor's assumption and assignment of the Assumed Contracts meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code.  Additionally, White River has provided adequate assurance of future performance of its obligations under the Assumed Contracts.  The assumption and assignment of the Assumed Contracts should be approved by the Court.

**F.      The Assumption and Assignment Meets the Requirements of Section 365(b) of the Bankruptcy Code.**

(1)     The Assumed Contracts Have No Defaults Requiring Cure.

34.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interests of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder.  This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-

12

debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D. N.Y. 1980). The statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be satisfied because all contract counterparties to the Assumed Contracts (a) will receive notice of this Motion; (b) have already received notice of the Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases filed as a Plan Supplement to the Debtor's confirmed Plan, which set a cure objection deadline of May 20, 2020 which was not extended for the affected counterparties by the *Order Granting Emergency Motion Modifying Paragraph 17 of the Order Approving Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* [Docket No. 1267] , and thus have already been given ample opportunity to object to the proposed cure costs; and (c) any payment to satisfy all cure costs will be made as soon as reasonably practicable after entry of the Order.

35.     Since filing the Original Motion, the Debtors have confirmed that no cure costs applicable to the Assumed Contracts are outstanding.

(2)     Non-Debtor Parties Will Be Adequately Assured of Future Performance.

36.     The third requirement of section 365(b) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here. "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based on the facts and circumstances of each case." *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). Although no single solution will satisfy every case, the "required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994). Among other things, adequate assurance may be given by

demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

37.    The Debtors believe that they can and will demonstrate that the requirements for assumption and assignment of the Assumed Contracts to White River will be satisfied.  White River has experience operating assets similar to the Assets in the Sale and has expressed its intent to invest in the Assets by, among other things, posting the requisite regulatory bonds with the respective state agencies in Mississippi and Louisiana.

<b><u>Waiver of Bankruptcy Rule 6004(a) and 6004(h)</u></b>

38.    Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Here, the Buyer insists upon an expeditious closing of the Sale.  The Debtors therefore believe that the waiver requested herein is necessary and appropriate to maximize value for the estates.  The Debtors request that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

<b><u>Reservation of Rights</u></b>

39.    Nothing contained herein is intended or should be construed as:  (a) an admission as to the validity or priority of any claim or lien against the Debtors; (b) a waiver of the Debtors'

rights to subsequently dispute such claim or lien on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to § 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**<u>Notice</u>**

40.     Notice of this Motion has been provided by e-mail, facsimile, or first class mail to: (i) the Office of the United States Trustee for the Southern and Western Districts of Texas; (ii) counsel to the Official Committee of Unsecured Creditors, Milbank LLP; (iii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iv) counsel to Royal Bank of Canada, Thompson & Knight LLP; (v) counsel to the DIP Agent and Notes Trustee, Arnold & Porter Kaye Scholer LLP; (vi) counsel to the Secured Notes Ad Hoc Group, Morrison & Foerster LLP; (vii) counsel to the Unsecured Notes Ad Hoc Group, Quinn Emanuel Urquhart & Sullivan LLP; (viii) counsel to Sanchez Oil & Gas Corporation, Haynes and Boone, LLP; (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Internal Revenue Service; (xi) the United States Securities and Exchange Commission; (xii) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (xiii) the state attorneys general for states in which the Debtors conduct business; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors request that this Court enter an order, substantially in the form of the Order filed with this Motion; (a) approving the Assignments attached to the proposed Order as **Exhibit 1-6**, of the Assets to White River free and clear of liens, claims, interests, and encumbrances, as and to the extent set forth in the Order; (b) authorizing the assumption and assignment of the Assumed Contracts; and (c) granting certain related relief.

Houston, Texas
Dated: June 12, 2020

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Elizabeth Freeman (TX Bar No. 24009222)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4284
Facsimile:  (713) 308-4184
mcavenaugh@jw.com

*Counsel for the Debtors and*
*Debtors in Possession*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr. (TX Bar No. 00793386)
Lacy M. Lawrence (TX Bar No. 24055913)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile:  (214) 969-4343
mbrimmage@akingump.com
llawrence@akingump.com

- and -

Ira S. Dizengoff (*pro hac vice*)
Lisa Beckerman (*pro hac vice*)
Jason P. Rubin (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile:  (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
jrubin@akingump.com

- and -

James Savin (*pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jsavin@akingump.com

*Counsel for the Debtors and*
*Debtors in Possession*

## **Certificate of Service**

I certify that on June 12, 2020 I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## Exhibit A

## Assumed Contracts

# EXHIBIT A

## ASSUMED CONTRACTS

| Contract No. | Grantor / Operator | Grantee / Non-Operator | Type | Date | State | County | Book | Page |
|---|---|---|---|---|---|---|---|---|
| MS550AGMT-001 | COMSTOCK RESOURCES | SANCHEZ OIL & GAS CORPORATION | LETTER AGREEMENT | 06/12/2014 | MS | Wilkinson | | |
| MS550AGMT-002 | SN TMS, LLC | ENCANA OIL & GAS (USA) INC | LETTER AGREEMENT | 12/04/2013 | MS | Wilkinson | | |
| MS550AGMT-003 | SN TMS, LLC | GOODRICH PETROLEUM COMPANY LLC | LETTER AGREEMENT | 01/22/2014 | MS | Wilkinson | | |
| MS550AGMT-004 | SM TMS, LLC | HALCON RESOURCES OPERATING INC | LETTER AGREEMENT | 09/08/2014 | MS | Wilkinson | | |
| MS550JOA-001 | ENCANA OIL & GAS (USA), INC., ET AL | SANCHEZ OIL & GAS CORPORATION | JOINT OPERATING AGMT | 01/01/2014 | MS | Wilkinson | 231 | 147 |
| MS550JOA-002 | SR ACQUISITION I, LLC, ET AL | GOODRICH PETROLEUM COMPANY LLC | JOINT OPERATING AGMT | 07/25/2014 | MS | Wilkinson | 231 | 65 |
| MS550JOA-003 | SR ACQUISITION I, LLC, ET AL | GOODRICH PETROLEUM COMPANY LLC | JOINT OPERATING AGMT | 07/25/2014 | MS | Wilkinson | 231 | 50 |
| MS550JOA-004 | HALCON ENERGY PROPERTIES, INC ET AL | HALCON OPERATING CO INC | JOINT OPERATING AGMT | 01/01/2014 | MS | Wilkinson | 231 | 110 |
| MS550JOA-005 | HALCON ENERGY PROPERTIES, INC ET AL | HALCON OPERATING CO INC | JOINT OPERATING AGMT | 09/01/2014 | MS | Wilkinson | 231 | 98 |
| MS550JOA-006 | HK TMS, LLC, ET AL | HALCON OPERATING CO INC | JOINT OPERATING AGMT | 09/01/2014 | MS | Wilkinson | 231 | 123 |
| MS550JOA-007 | HALCON ENERGY PROPERTIES INC, ET AL | HALCON OPERATING CO INC | JOINT OPERATING AGMT | 05/21/2014 | MS | Wilkinson | 281 | 137 |
| MS550SUR-001 | V. J. PURPERA, JR. | SN TMS, LLC | PIPELINE EASEMENT O&G | 01/31/2014 | MS | Wilkinson | 202 | 151 |
| MS560JOA-001 | ENCANA OIL & GAS (USA) INC | SN TMS, LLC, ET AL | JOINT OPERATING AGMT | 12/01/2014 | MS | Amite | 271 | 435 |
| MS560JOA-002 | ENCANA OIL & GAS (USA) INC | SN TMS, LLC, ET AL | JOINT OPERATING AGMT | 12/01/2013 | MS | Amite | | |
| MS563JOA-001 | GOODRICH PETROLEUM COMPANY LLC | SR ACQUISITION I, LLC, ET AL | JOINT OPERATING AGMT | 03/15/2014 | MS | Amite | 272 | 265 |

**<u>Exhibit B</u>**

**Redline**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTOR'S AMENDED[2] EMERGENCY MOTION (A) AUTHORIZING THE SALE AND ASSIGNMENT OF CERTAIN OF THE DEBTOR'S ASSETS TO WHITE RIVER SPV 2 LLC, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (C) GRANTING RELATED RELIEF

> EMERGENCY RELIEF HAS BEEN REQUESTED.  A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 18, 2020 AT 8:00 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 404, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.  IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.
>
> RELIEF IS REQUESTED NOT LATER THAN JUNE 5.18. 2020.
>
> PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.
>
> IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.
>
> AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS 832-917-1510. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.
>
> PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.
>
> ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE ISGUR IS

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102).  The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[2] This Amended Motion amends the *Emergency Motion (A) Authorizing the Sale and Assignment of Certain of the Debtor's Assets to White River SPV 2 LLC, (B) Authorizing the Assumption of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (C) Granting Related Relief* filed by the Debtors at ECF 1297 (the "Original Motion").

ny 1932756

"JUDGEISGUR". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE

NAME AND CLICK "NOTIFY". HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING. YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:

1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;

2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;

3) SELECTING JUDGES' PROCEDURES AND SCHEDULES;

4) SELECTING "VIEW HOME PAGE" FOR JUDGE MARVIN ISGUR;

5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE";

6) SELECT IN RE SANCHEZ ENERGY CORPORATION, FROM THE LIST OF ELECTRONIC APPEARANCE LINKS; AND

7) AFTER SELECTING IN RE SANCHEZ ENERGY CORPORATION,  FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.

SUBMITTING OUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING.

The above-captioned debtors and debtors in possession ("Sanchez Energy" or the "Debtors") state as follows in support of this motion (this "Amended Motion")[3]:

**Relief Requested**

1.      The Debtors seek entry of an order substantially in the form of the proposed order (the "Sale Order") filed with this Amended Motion, (a) approving the sale and assignment (the "Sale")[24] of ~~the certain of the Debtors'~~ Debtor SN TMS, LLC's assets in Mississippi and Louisiana ~~assets~~ (the "Assets")[3] to White River SPV 2 LLC (the "Buyer" or "White River"), as more particularly set forth in the forms of Assignment, Bill of Sale, and Conveyance substantially in the forms attached to the Sale Order as **Exhibits 1-6** (the "Assignments"), free and clear of liens, claims, interests, and encumbrances, as and to the extent set forth in the Sale

---

[3] Attached hereto is a redline comparing the Original Motion against this, Amended Motion. **Exhibit 7.**

[2] [4] The Assets ~~do not~~ constitute substantially all of ~~the~~ Debtor SN TMS, LLC's Assets.  The Sale does not include the assets of any of the other Debtors in the above captioned chapter 11 cases.

[3] ~~The Assets are owned in undivided interests by SN TMS, LLC (a Debtor) and a non-Debtor seller, SR Acquisition I, LLC, which has been made a party to the Assignments for that reason along with certain other non-Debtor sellers of personal property associated with the Assets.~~

2

Order, (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases associated with the Assets, and (c) granting certain related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by this Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas.

## Background

5.      Sanchez Energy Corporation ("SN"), a publicly owned Delaware corporation headquartered in Houston, Texas, together with its direct and indirect Debtor and non-Debtor subsidiaries and affiliates, is an independent exploration and production company focused on the acquisition and development of U.S. onshore oil and natural gas resources.  The Debtors' principal operations are conducted in Eagle Ford Shale in South Texas.  The Debtors operate most of their oil and natural gas assets.

6.      Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of Cameron W. George, Executive Vice President and Chief*

3

*Financial Officer of Sanchez Energy Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [ECF No. 16].

7.       Since commencing these cases, the Debtors ~~have continued~~continue to operate their businesses and manage their property as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On August 26, 2019, the Official Committee of Unsecured Creditors was appointed [ECF No. 228].~~45~~[46]

8.       On January 22, 2020, the Court entered the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 865] (the "DIP Order").

9.       On April 30, 2020, the Court entered an *Order Approving the Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* (the "Confirmation Order") [ECF No. 1212] confirming the Debtor's Second Amended Plan of Reorganization of Sanchez Energy Corporation Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") [ECF No. 1198].

10.      A status conference on the Original Motion was held on June 4, 2020 at 5:00 p.m. in the above styled court (the "Court"). After the status conference, the Court set a hearing on June 6, 2020 at 11:15 a.m. At the June 6, 2020 hearing, the Debtors announced their intent to proceed with a two-step transaction. The first step would proceed with certain non-debtor entities and White River. The second step would concern White River acquiring certain Assets and Assignments from Debtor SN TMS, LLC, subject to the Court's approval at a later time. The

---

[46]  The U.S. Trustee subsequently filed the *Notice of Reconstituted Committee of Unsecured Creditors* on August 30, 2019 [ECF No. 240].

Court then continued the hearing on the Original Motion to June 18, 2020 at 8:00 a.m. with the understanding the Debtors would file the Amended Motion. The Sale in this Amended Motion embodies the second step of the two-step transaction announced on the record during the June 6, 2020 hearing.

**The Sale and Assignment**

11.     10. The Debtors seek Debtor SN TMS, LLC seeks to sell and assign the Assets to White River.  White River will assume all plugging and abandonment liability in connection with the Assets.   This Sale relieves the Debtors and their estates of significant plugging and abandonment liabilities.  Given the market for oil and gas assets and the significant volatility in the market, these sales are beneficial to the estates and the Debtors' stakeholders.  Reducing the estates' plugging and abandonment liabilities through this Sale is an exercise of the Debtors' business judgment and will maximize value to stakeholders.  The total purchase price to be paid by White River for Assets consist primarily of non-producing leasehold acreage, and six (6) wellbores. When the Assets and related are combined with those assets owned by non-Debtor sellers is $1,000, which purchase price will be allocated among the Debtor and other non-Debtor sellers and contracts acquired by the Buyer in step one of the transaction, there are approximately 225 wells and six (6) wellbores being acquired by White River. All of these wells and wellbores have attendant future plugging and abandonment obligations.  The Debtors' experience in the Tuscaloosa Marine Shale Play confirms that the cost to plug each of these wells and wellbores will range from $25,000 to $75,000 each. Taking the median of this range, the Debtors project the assumption of the plugging and abandonment obligations equates to at least $11,550,000 in

5

consideration being provided by White River. No additional cash consideration is being paid in by White River in the Sale.[6]

12.    ~~11.~~ The Assets are more fully described in Section 1.1 of the Assignments, and include all of ~~Sanchez Energy~~Debtor SN TMS, LLC's rights, title, and interest in and to the Assets including all leases, wells, surface agreements, equipment, certain vehicles, and the produced hydrocarbons, all to the extent set forth in the applicable ~~Assignment~~Assignments.

**Basis for Relief**

**A.    The Proposed Sale and Assignment is Fair and Consistent with the Debtors' Reasonable Business Judgment.**

13.    ~~12.~~ Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code § 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate; however, bankruptcy courts in this District and elsewhere have required that the authorization of such use, sale, or lease of property of the estate out of the ordinary course of business be based upon sound business justification of the trustee or debtor in possession. *See, e.g., Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."

---

[6] While the Original Motion contemplated cash consideration as part of the Sale, that term changed as result of the two-step transaction. As part of step one of the transaction, White River did pay cash consideration to certain non-debtor entities for certain of their assets.

~~ny 1932756~~

14. ~~13.~~ Once the debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 86 B.R. 98 (Bankr. N.D. Ill. 1995).

15. ~~14.~~ The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-565 (8th Cir. 1997).

16. ~~15.~~ The Debtors have a sound business justification for selling and assigning the Assets to White River under the terms of the Assignments. These assets are of relatively low value, are located outside the Debtor's core area of operation and have significant plugging and abandonment liabilities associated with them. The Debtors saw a dramatic decline in the value of their oil and gas assets during the pre-confirmation period of these cases. They now seek to preserve as much value as possible for all stakeholders. Reducing significant plugging and abandonment liability is a sizeable value to the estates. If the Debtors are not allowed to sell and assign the Assets, the Debtors' estates will be deprived of the opportunity to shed the plugging and abandonment liabilities associated with the Assets.

17. ~~16.~~ The Debtors determined that the proposed Sale is in the best interest of the estates and the creditors and is consistent with the Debtors' reasonable business judgment.

**B.      The Proposed Private Sale is Appropriate under Bankruptcy Rule 6004.**

18. ~~17.~~ Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363. Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). *See In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) (noting that "there is

7

no prohibition against a private sale or against a sale to insiders; and there is no requirement that the sale be by public auction") (quoting *In re Woodscape L.P.*, 134 B.R. 165, 174 (Bankr. D. Md. 1991)); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *88 (Bankr. D. Del. Aug. 15, 2007) ("[s]ales of property rights outside the ordinary course of business may be by private sale or public auction."); *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 (N.D. Ill. 1988) ("[s]ection 363(b) is not limited to sales involving competitive bidding. Bankruptcy Rule 6004, which sets forth procedures for section 363(b) transfers, expressly provides for private sales."). Courts have held that a debtor has broad discretion to determine the manner in which its assets are sold. *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del 1981). A debtor may conduct a private sale if a good business reason exists. *See In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998).

19. ~~18.~~ The proposed private Sale to White River is appropriate in light of the facts and circumstances of this chapter 11 case. The Assets pose significant plugging and abandonment liabilities for the estates and it is in the Debtors' best interest to relieve the estates of that burden. It is unlikely that the Debtors would be able to negotiate better terms to sell these Assets.

20. ~~19.~~ The transaction with White River allows the Debtors to maximize the value received for the assets being sold and provides a significant benefit to the Debtors' estate. The Debtors considered and analyzed all reasonably available options in connection with the Sale of the Assets, considered the reasonable view of its creditors, and determined that the terms and conditions set forth in the Assignment, and the certainty of closing, are all fair, reasonable, and

8

constitute the highest or otherwise best value obtainable in exchange for the Assets under the circumstances presented.

21.    ~~20.~~ The Debtors request that the Court approve the proposed private Sale of the Assets in accordance with the Assignment.

### C.    The Buyer is Entitled to the Protections of 11 U.S.C. § 363(m).

22.    ~~21.~~ Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

23.    ~~22.~~ Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

24.    ~~23.~~ White River is a good faith purchaser as the term is used in 11 U.S.C. § 363(m) and, as such, is entitled to the protections of 11 U.S.C. § 363(m).  The Sale of the Assets is proposed and the Assignment will be consummated in good faith in that the transaction represents an agreement providing for the exchange of good and equivalent consideration.  The Sale is the product of extensive arm's length negotiations between the Debtors and White River. The result is market terms for the Assignment.  Thus, the Sale to White River is in good faith.

### D.    The Court May Approve the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(f).

25.    ~~24.~~ The Court may authorize the Sale of the Assets free and clear of all liens, claims, and encumbrances.   The DIP Lenders support the sale. Debtors do not expect any prepetition secured party to object.

ny 1932756

26.   ~~25.~~ Section 363(f) of the Bankruptcy Code allows the Debtors to sell the Assets free and clear of any interest in the Assets if:

(1)   Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)   Such entity consents;

(3)   Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)   Such interest is in a bona fide dispute; or

(5)   Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5).

27.   ~~26.~~ The Debtors request that the Sale to Buyer be free and clear of all liens, claims, interests, and encumbrances.  In evaluating such a sale, a court must balance the need for flexibility with the concern of affected creditors.  *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989).  The Court must also determine that creditors' lien rights are adequately protected and that the offered price is the highest price and/or best terms obtainable under the circumstances in the particular case.  *Id.*; *In re Beker Indus. Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986).

28.   ~~27.~~ White River will not close the Sale if the Assets are not sold free and clear under the Sale Order.  Further, the Debtor satisfies section 363(f)(2) of the Bankruptcy Code because the Prepetition Secured Parties consent to the Sale of the Assets to the Buyer, and the Debtor does not expect any other prepetition secured party to object to the Motion.  Any lien, claim, interest, or encumbrance, that exists on the Assets will be adequately protected by attachment to the net proceeds of the Sale (if any) in the same priority that existed on the Petition Date, subject to any claims and defenses that the Debtor may possess with respect thereto, and/or

10

the Debtor will obtain the consent of the party holding the lien, claim, or encumbrance.  The Debtors further request that any holder of a lien, claim, interest, or encumbrance that fails to timely object to the Sale be deemed to have consented to the Sale free and clear of their purported interest or lien under § 363(f)(2).[57]

29.  ~~28.~~ The Debtors request that the Assets be sold to White River free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching to the proceeds of the Sale of the Assets (if any).

**E.      The Assumption and Assignment of the Assumed Contracts Should be Approved.**

(1)     The Assumption and Assignment of the Assumed Contracts (as defined below) Reflects the Debtor's Reasonable Business Judgment.

30.  ~~29.~~ Sections 365(a) and (b) of the Bankruptcy Code authorize a debtor-in-possession to assume executory contracts or unexpired leases subject to the court's approval, and requires a debtor-in-possession to satisfy certain requirements at the time of assumption.  *See* 11 U.S.C. § 365(a) ("subject to the court's approval, [a debtor] may assume or reject any executory contract or unexpired lease of the debtor").  To assume an executory contract or unexpired lease, the Debtor must meet certain requirements under § 365(b), including, curing any defaults under such executory contract and unexpired leases and providing adequate assurance of future performance.  *See* 11 U.S.C. § 365(b).

31.  ~~30.~~ The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.  *See Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 524-25 & n. 5 (5th Cir. 2004).

---

[57] As outlined in the Notice section below, the Debtor will provide notice of this Motion to all Persons known or reasonably believed to have asserted a lien or encumbrance on any of the Assets.

32. 31. Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. Bankruptcy Code § 365(f) specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable. See 11 U.S.C. § 365(f)(1); *see also In re Amidee Capital Grp., Inc.*, No. 10-20041, 2010 WL 5141276, at *5 (Bankr. S.D. Tex. Oct. 7, 2010) (treating such prohibitions or limitations as null and void under section 365(f). Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *See In re PRK Enters., Inc.*, 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999) (internal quotations omitted). Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.

33. 32. The contracts to be assumed (the "Assumed Contracts") are set forth in Exhibit A attached hereto. The Assumed Contracts are necessary to operate the Assets and, as such, the Assumed Contracts are essential to inducing the highest or otherwise best offer for the Debtors' assets. The Debtor's assumption and assignment of the Assumed Contracts meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code. Additionally, White River has provided adequate assurance of future performance of its obligations under the Assumed Contracts. The assumption and assignment of the Assumed Contracts should be approved by the Court.

ny 1932756

**F.  The Assumption and Assignment Meets the Requirements of Section 365(b) of the Bankruptcy Code.**

(1)  ~~Defaults Under the~~The Assumed Contracts ~~will be Cured~~Have No Defaults Requiring Cure.

34.  ~~33.~~ Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interests of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder.  This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain."  *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D. N.Y. 1980).  The statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be satisfied because all contract counterparties to the Assumed Contracts (a) will receive notice of this Motion; (b) have already received notice of the Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases filed as a Plan Supplement to the Debtor's confirmed Plan, which set a cure objection deadline of May 20, 2020 which was not extended for the affected counterparties by the *Order Granting Emergency Motion Modifying Paragraph 17 of the Order Approving Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* [Docket No. 1267] , and thus have already been given ample opportunity to object to the proposed cure costs; and (c) any payment to satisfy all cure costs will be made as soon as reasonably practicable after entry of the Order.

13

35.    34. All Since filing the Original Motion, the Debtors have confirmed that no cure costs applicable to the Assumed Contracts, will be paid in connection with the Assignment and in accordance with the DIP Order are outstanding.

(2)    Non-Debtor Parties Will Be Adequately Assured of Future Performance.

36.    35. The third requirement of section 365(b) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here. "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based on the facts and circumstances of each case." *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). Although no single solution will satisfy every case, the "required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

37.    36. The Debtors believe that they can and will demonstrate that the requirements for assumption and assignment of the Assumed Contracts to White River will be satisfied. White River has experience operating assets similar to the Assets in the Sale and has expressed its intent to invest in the Assets by, among other things, posting the requisite regulatory bonds with the respective state agencies in Mississippi and Louisiana.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

38.   ~~37.~~ Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Here, the Buyer insists upon an expeditious closing of the Sale.  The Debtors therefore believe that the waiver requested herein is necessary and appropriate to maximize value for the estates.  The Debtors request that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## Reservation of Rights

39.   ~~38.~~ Nothing contained herein is intended or should be construed as:  (a) an admission as to the validity or priority of any claim or lien against the Debtors; (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to § 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**~~Emergency Consideration is Requested~~**

~~39.     The Sale of the Assets is scheduled to close on June 5, 2020.  White River and the Debtors seek entry of the Order granting this Motion prior to June 5, 2020 to ensure that the closing proceeds as planned and so that the estates may be relieved of these burdensome assets at the earliest possible date.~~

## **Notice**

40.     Notice of this Motion has been provided by e-mail, facsimile, or first class mail to:  (i) the Office of the United States Trustee for the Southern and Western Districts of Texas; (ii) counsel to the Official Committee of Unsecured Creditors, Milbank LLP; (iii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iv) counsel to Royal Bank of Canada, Thompson & Knight LLP; (v) counsel to the DIP Agent and Notes Trustee, Arnold & Porter Kaye Scholer LLP; (vi) counsel to the Secured Notes Ad Hoc Group, Morrison & Foerster LLP; (vii) counsel to the Unsecured Notes Ad Hoc Group, Quinn Emanuel Urquhart & Sullivan LLP; (viii) counsel to Sanchez Oil & Gas Corporation, Haynes and Boone, LLP; (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Internal Revenue Service; (xi) the United States Securities and Exchange Commission; (xii) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (xiii) the state attorneys general for states in which the Debtors conduct business; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

ny 1932756

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors request that this Court enter an order, substantially in the form of the Order filed with this Motion; (a) approving the Assignments attached to the proposed Order as **Exhibit 1-6**, of the Assets to White River free and clear of liens, claims, interests, and encumbrances, as and to the extent set forth in the Order; (b) authorizing the assumption and assignment of the Assumed Contracts; and (c) granting certain related relief.

17

ny 1932756

Houston, Texas
Dated: June ____, 2020

/s/ *Matthew D. Cavenaugh*
_____
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Elizabeth Freeman (TX Bar No. 24009222)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4284
Facsimile:  (713) 308-4184
mcavenaugh@jw.com

*Counsel for the Debtors and*
*Debtors in Possession*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr. (TX Bar No. 00793386)
Lacy M. Lawrence (TX Bar No. 24055913)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile:  (214) 969-4343
mbrimmage@akingump.com
llawrence@akingump.com

- and -

Ira S. Dizengoff (*pro hac vice*)
Lisa Beckerman (*pro hac vice*)
Jason P. Rubin (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile:  (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
jrubin@akingump.com

- and -

James Savin (*pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jsavin@akingump.com

*Counsel for the Debtors and*
*Debtors in Possession*

ny 1932756

## <u>Certificate of Service</u>

I certify that on June 2__, 2020 I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

# EXHIBIT A

## ASSUMED CONTRACTS

| Contract No. | Grantor / Operator | Grantee / Non-Operator | Type | Date | State | County | Book | Page |
|---|---|---|---|---|---|---|---|---|
| MS550AGMT-001 | COMSTOCK RESOURCES | SANCHEZ OIL & GAS CORPORATION | LETTER AGREEMENT | 06/12/2014 | MS | Wilkinson | | |
| MS550AGMT-002 | SN TMS, LLC | ENCANA OIL & GAS (USA) INC | LETTER AGREEMENT | 12/04/2013 | MS | Wilkinson | | |
| MS550AGMT-003 | SN TMS, LLC | GOODRICH PETROLEUM COMPANY LLC | LETTER AGREEMENT | 01/22/2014 | MS | Wilkinson | | |
| MS550AGMT-004 | SM TMS, LLC | HALCON RESOURCES OPERATING INC | LETTER AGREEMENT | 09/08/2014 | MS | Wilkinson | | |
| MS550JOA-001 | ENCANA OIL & GAS (USA), INC., ET AL | SANCHEZ OIL & GAS CORPORATION | JOINT OPERATING AGMT | 01/01/2014 | MS | Wilkinson | 231 | 147 |
| MS550JOA-002 | SR ACQUISITION I, LLC, ET AL | GOODRICH PETROLEUM COMPANY LLC | JOINT OPERATING AGMT | 07/25/2014 | MS | Wilkinson | 231 | 65 |
| MS550JOA-003 | SR ACQUISITION I, LLC, ET AL | GOODRICH PETROLEUM COMPANY LLC | JOINT OPERATING AGMT | 07/25/2014 | MS | Wilkinson | 231 | 50 |
| MS550JOA-004 | HALCON ENERGY PROPERTIES, INC ET AL | HALCON OPERATING CO INC | JOINT OPERATING AGMT | 01/01/2014 | MS | Wilkinson | 231 | 110 |
| MS550JOA-005 | HALCON ENERGY PROPERTIES, INC ET AL | HALCON OPERATING CO INC | JOINT OPERATING AGMT | 09/01/2014 | MS | Wilkinson | 231 | 98 |
| MS550JOA-006 | HK TMS, LLC, ET AL | HALCON OPERATING CO INC | JOINT OPERATING AGMT | 09/01/2014 | MS | Wilkinson | 231 | 123 |
| MS550JOA-007 | HALCON ENERGY PROPERTIES INC, ET AL | HALCON OPERATING CO INC | JOINT OPERATING AGMT | 05/21/2014 | MS | Wilkinson | 281 | 137 |
| MS550SUR-001 | V. J. PURPERA, JR. | SN TMS, LLC | PIPELINE EASEMENT O&G | 01/31/2014 | MS | Wilkinson | 202 | 151 |
| MS560JOA-001 | ENCANA OIL & GAS (USA) INC | SN TMS, LLC, ET AL | JOINT OPERATING AGMT | 12/01/2014 | MS | Amite | 271 | 435 |
| MS560JOA-002 | ENCANA OIL & GAS (USA) INC | SN TMS, LLC, ET AL | JOINT OPERATING AGMT | 12/01/2013 | MS | Amite | | |
| MS563JOA-001 | GOODRICH PETROLEUM COMPANY LLC | SR ACQUISITION I, LLC, ET AL | JOINT OPERATING AGMT | 03/15/2014 | MS | Amite | 272 | 265 |

ny 1932756

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER APPROVING DEBTORS' MOTION (A) AUTHORIZING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES TO WHITE RIVER SPV 2 LLC, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (C) GRANTING RELATED RELIEF

[Relates To ECF No. _____]

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession for entry of an order (this "Order"), (a) approving the form of Assignments, Bill of Sale, and Conveyance substantially in the forms attached hereto as **Exhibits 1-6** (the "Assignment") by and between Sanchez Energy and White River SPV 2 LLC (the "Buyer" or "White River"), dated June 1, 2020 (the "Effective Time"), which provides for (a) the sale of certain of the Debtors Mississippi and Louisiana Assetsassets (the "Assets") to White River in a private sale free and clear of all liens, claims, interests, and encumbrances (as more fully defined in paragraph 6 below, the "Liens, Claims, and Interests") to the fullest extent permitted by § 363(f) of the Bankruptcy Code (the "Sale"); and (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases associated with the Assets, and (c) granting

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102).  The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

ny-1932756

other related relief, all as more fully set forth in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interest of the Debtors' estate, its creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was given to all parties entitled to such notice under the Bankruptcy Code and Bankruptcy Rules, is appropriate under the circumstances, and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

### General Provisions

1.     The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

2.     All objections to the Motion or relief requested therein, if any, that have not been withdrawn, waived, or settled as announced to this Court at the Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

**Approval of the Sale**

3.       The Assignments are hereby approved, and the Debtors are authorized to take any and all actions necessary or appropriate to consummate the Sale.

4.       The Debtors have satisfied all requirements of §§ 363(b) and 363(f) of the Bankruptcy Code, and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of all Liens, Claims, and Interests.

**Sale and Transfer of Assets**

5.       Pursuant to §§ 105 and 363(b) of the Bankruptcy Code, the Debtors, and their directors, officers, employees, and agents have the necessary corporate power and are authorized and directed to take any and all actions necessary to: (a) consummate the Sale of the Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Assignment, (b) close the Sale of the Assets as contemplated by the Assignment and this Order, and (c) execute and deliver, perform under, consummate, implement, and close fully the Assignment, together with all documents, instruments, and agreements necessary or appropriate to consummate the transaction pursuant to the Assignment.

6.       Pursuant to §§ 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer, and upon the closing shall have transferred, all of the Debtors' right, title, and interest in and to, and possession of, the Assets to Buyer, which shall be immediately vested in Buyer subject to the terms of the Assignments.  All such Liens, Claims, and Interests shall attach to the proceeds of the Sale of the Assets (if any) in the order of their priority, with the same validity, force, and effect that they had against the Assets prior to entry of this Order, subject to any claims and defenses that the Debtor may possess with respect thereto.

7.       This Order shall be binding in all respects upon the Debtors, their estates, their affiliates, creditors (whether known or unknown), and holders of equity interests in the Debtors,

3

any holders of Liens, Claims, and Interests against or on all or any portion of the Assets, all counterparties to the Contracts, Buyer and all of their successors and assigns. This Order and the Assignments shall inure to the benefit of the Debtors and their estates, Buyer, and their respective successors and assigns.

8.      This Order shall be effective as a determination that, pursuant to the Assignments, all Liens, Claims, and Interests (except as provided under the Assignments), have been unconditionally released, discharged and terminated as to the Buyer and the Assets. This Order is binding upon and shall govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale contemplated by the Assignments.

9.      Following entry of the Order, no holder of any Lien, Claim, or Interest in the Assets (except to the extent provided under the Assignment solely in accordance with applicable law) shall interfere with the Buyer's title to, or use and enjoyment of, the Assets based on, or related to, any such Lien, Claim or Interest, or based on any actions the Debtors may take in this case.

10.     Persons, including, without limitation, the Debtors, all holders of Liens, Claims, or Interests (other than as provided under the Assignment) or other rights, debt security holders, equity security holders, governmental, tax and regulatory authorities (as to governmental, tax and

ny-1932756-

regulatory authorities, to the greatest extent allowed by applicable law), lenders and trade and other creditors holding and/or asserting claims (as that term is defined in the Bankruptcy Code) including, but not limited to, claims arising out and/or related to the Sale of the Assets (except for any claims arising pursuant to the Assignment), and/or Liens, Claims, or Interests arising in any way in connection with any acts, or failure to act, of the Debtor, obligations, demands or guaranties, of any kind and nature against or in the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtor, the Assets, the operation of the Debtors' business prior to the Effective Time, or the transfer of the Assets to the Buyer, hereby are, and will be, forever barred, estopped and permanently enjoined from asserting such Liens, Claims, or Interests against Buyer, its successors or assigns, or its property, including the Assets.  Nothing in this Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit, to which the Buyer may be subject to as the post-sale owner or operator of any property that is an Asset (as defined in the Assignment) after the date of entry of this Order; *provided, however*, that all rights and defenses of the Buyer under nonbankruptcy law are preserved.  Nothing in this Order or the Assignment authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and required approvals, if any, under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

ny-1932756-

11.     Upon entry of this Order, all creditors and any other holder of a Lien, Claim or Interest is authorized and directed to execute such documents and take all other actions as may be necessary to release its Lien, Claim, or Interest in the Assets (except to the extent provided in the Assignment).  If any person or entity that has filed financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens* or other documents or agreements evidencing Liens, Claims or Interests against the Assets has not delivered to the Debtor prior to the closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Assets or otherwise, then with regard to the Assets: (i) the Debtors are hereby authorized, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets; and (ii) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, and Interests (except to the extent provided under the Assignment) against the Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Assignment, including, without limitation, recordation of this Order.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.  This Order shall be binding upon and shall govern the acts of all persons including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons who may be required

ny 1932756

by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.  Notwithstanding and without limiting the foregoing, the provisions of this Order authorizing the Sale of the Assets free and clear of Liens, Claims and Interests (except to the extent provided in the Assignment), shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

12.      The Buyer is not and shall not be deemed a "successor" to the Debtors or their estates, or to have, *de facto* or otherwise, merged with or into the Debtors or be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors under any theory of law or equity as a result of any action taken in connection with the Assignment or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Assets.  The Buyer has given substantial consideration under the Assignment, which consideration shall constitute valid, valuable, and sufficient consideration for the absolution from any potential claims of successor liability of the Buyer to the greatest extent allowed by applicable law.

## Good Faith

13.      The Assignment and all related documents, instruments and agreements were negotiated, proposed and entered into by the Debtors and the Buyer at arm's length, without collusion, and in good faith within the meaning of § 363(m) of the Bankruptcy Code.  The Buyer is not  an "insider" of the Debtors, as that term is defined in Bankruptcy Code § 101(31).  The Buyer is a good faith purchasers and entitled to all of the protections of § 363(m) of the

ny 1932756

Bankruptcy Code.  The good faith finding is necessary under the Sale and the Sale cannot proceed without it.

### **Assumption and Assignment of the Assumed Contracts**

14.     Pursuant to §§ 105(a), 363(b)(1), and 365(a) of the Bankruptcy Code, the Debtors' Sale, assumption, and assignment of the Assumed Contracts to Buyer is approved, and the requirements of § 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied. All requirements and conditions under §§ 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the Assumed Contracts have been satisfied.  The Debtors are hereby authorized to (i) assume and assign to Buyer, effective as of the Effective Time, the Assumed Contracts free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever, other than to the extent provided under the Assignment, and (ii) execute and deliver to Buyer such documents or other instruments as Buyer reasonably deems necessary to assign and transfer the Assumed Contracts to Buyer.  Buyer has provided adequate assurance of future performance of their obligations under the Assumed Contracts.  Upon entry of this Order, all cure amounts applicable to the Assumed Contracts will be paid in accordance with the DIP Order.

15.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of Buyer in accordance with their terms, notwithstanding any provision in any such contract that prohibits, restricts, or conditions such assignment or transfer pursuant to § 365(f) of the Bankruptcy Code.  There shall be no accelerations, assignment fees, increases, or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

ny 1932756

**Additional Provisions**

16.     Nothing in this Order shall be deemed a waiver of any rights, remedies or defenses that any party has or may have under applicable bankruptcy and non-bankruptcy law, under any related agreements or any letters of credit relating thereto, or any rights, remedies or defenses of the Debtor with respect thereto.

17.     To the extent that any provision of this Order is inconsistent with the terms of the Assignment, the Order shall govern.

18.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

19.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

20.     The requirements set forth in Bankruptcy Local Rule 9013-1 and the Complex Case Procedures are satisfied by the contents of the Motion.

21.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry hereof.

22.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: _____, 2020

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

ny-1932756-

## EXHIBIT 1

**Assignment**

10