IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| SANCHEZ ENERGY CORPORATION, *et al.*, | ) Case No. 19-34508 (MI) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |

## LIMITED OBJECTION AND RESERVATION
## OF RIGHTS OF GAVILAN RESOURCES, LLC TO
## ASSUMPTION AND REJECTION OF CONTRACTS UNDER
## THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF SANCHEZ ENERGY CORPORATION AND ITS DEBTOR AFFILIATES

Gavilan Resources, LLC ("**Gavilan**") by and through undersigned counsel submits this limited objection and reservation of rights (the "**Objection**") to the proposed assumption and rejection of contracts under the *Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* [Docket No. 1205] (the "**Plan**") filed by Sanchez Energy Corporation and its debtor affiliates in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") and pursuant to the *Order Approving Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* [Docket No. 1212] (as amended by the *Order Granting Emergency Motion Modifying Paragraph 17 of the Order Approving Disclosure Statement and Confirming Second*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

*Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* [Docket No. 1267], the "**Confirmation Order**"), and the *Notice of Filing of Fourth Amended Exhibits B and C of the Plan Supplement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* [Docket No. 1326] (the "**Executory Contract Notice**"), and respectfully states as follows:

## BACKGROUND

A. Gavilan And The Comanche Assets

1. Gavilan is a private company in the business of acquiring, developing, and producing oil and natural gas assets in the Eagle Ford shale play in south Texas. In March 2017, Gavilan, along with non-Debtor SN EF UnSub LP ("**UnSub**") and Debtor SN EF Maverick, LLC ("**SN Maverick**") (together with Debtor Sanchez Energy Corporation, "**Sanchez**" or the "**Debtors**"), purchased certain assets in the Eagle Ford shale, known as the Comanche assets (the "**Comanche Assets**"), for approximately $2.3 billion from Anadarko Petroleum ("**Anadarko**"). Gavilan paid Anadarko 50% of the purchase price, roughly $1.13 billion, and acquired 50% of all of Anadarko's interest in the Comanche Assets. UnSub paid Anadarko $744 million for the other 50% of Anadarko's proved developed producing ("**PDP**") assets, and 20% of Anadarko's proved developed non-producing ("**PDNP**") assets and proved undeveloped ("**PUD**") assets. SN Maverick paid Anadarko $394 million for the remaining 30% of Anadarko's PDNP and PUD assets.

2. Gavilan, Sanchez, and UnSub, either as part of the transaction with Anadarko or immediately thereafter, became party to a number of agreements and obtained rights with respect to others related to the operations and management of the Comanche Assets. These agreements range from joint operating agreements ("**JOAs**"), pooling agreements, marketing agreements, to

the Joint Development Agreement ("**JDA**") – the subject of the Operatorship Dispute (defined below) currently pending before this Court. In addition to the contracts to which Gavilan is a direct party, certain Debtor contracts inure to the benefit of Gavilan and cannot be modified without the consent of Gavilan. For example, each of the marketing agreements between Gavilan and Sanchez requires Gavilan's approval for certain new, or changes to existing, processing, treating, transportation or similar or related agreements.

B. *The Operatorship Dispute, The Plan And The Debtors' Executory Contracts*

3. As referenced above, Gavilan, Sanchez, and UnSub are parties to the JDA. Sanchez was in Default (as defined in the JDA), for two independent reasons, under the JDA for months – before Sanchez filed its own chapter 11 cases. Sanchez disputed the Defaults, forcing Gavilan to confirm the Defaults through a contractually mandated arbitration process. Gavilan started arbitration proceedings in February 2019.

4. In August 2019, before the conclusion of the arbitration, the Debtors and certain affiliates filed the above-captioned Chapter 11 Cases. Following the commencement of the Debtors' Chapter 11 Cases, Gavilan sought relief from the automatic stay to continue the arbitration. In December 2019 and January 2020, Gavilan and the Debtors agreed to move the arbitration proceedings to these Chapter 11 Cases so that the dispute among the parties, the "Operatorship Dispute," could finally be resolved. The Operatorship Dispute is styled as *Gavilan Resources, LLC v. SN EF Maverick, LLC, et al.*, Adv. Proc. No. 20-03021. Trial on the Operatorship Dispute concluded on June 5, 2020 and, as of the date hereof, the matter remains under consideration by the Court.

5. On April 30, 2020, the Court confirmed the Plan proposed by the Debtors, but the Debtors left unresolved issues related to assumption and rejection of numerous contracts, including

those with, and otherwise affecting, Gavilan. The Debtors' lists of proposed contracts to be assumed or rejected have been filed, and amended, on a number of occasions. The Executory Contract Notice is the last filed list. Exhibit B to the Executory Contract Notice is the list of executory contracts that the Debtors intend to reject, while Exhibit C to the same is the list of the executory contracts that the Debtors intend to assume. On June 7, 2020, Gavilan requested additional information regarding certain of the contracts listed in the Executory Contract Notice and, on June 20, 2020, reiterated that request and made additional requests for information relevant to this Objection and the Debtors' proposed assumption or rejection (the "**Informal Requests**"). As of the time of this filing, Gavilan has not received a response to the Informal Requests.

C. *Gavilan's Chapter 11 Cases*

6. On May 15, 2020, Gavilan and its affiliated debtors each commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Gavilan's and its debtor affiliate's cases (the "**Gavilan Cases**") are being jointly administered under *In re Gavilan Resources, LLC*, Case No. 20-32656 (Bankr. S.D. Tex. 2020). At the request of Gavilan, the automatic stay was lifted in the Gavilan Cases for the limited purpose of allowing Gavilan and Sanchez to prosecute their asserted claims to a final judgment in the Operatorship Dispute, and for no other reason.

**OBJECTION**

7. Pursuant to sections 365 and 362[2] of the Bankruptcy Code, Gavilan files this limited Objection and reservation of rights with respect to the Debtors' proposed rejection and assumption of any contracts to which Gavilan is a party or in which Gavilan has an interest (the "**Contracts**").

---

[2] The automatic stay imposed in the Gavilan Cases has not been modified or otherwise lifted and the Debtors in these Chapter 11 Cases have made no attempt to do so. Gavilan is reserving all rights to seek enforcement of the automatic

4

*A. Whether Assumption Or Rejection Is Supported By The Debtors' Business Judgment Cannot Be Determined Until Resolution Of The Operatorship Dispute*

8. The Debtors' proposed assumption or rejection of the Contracts is not appropriate at this stage of these Chapter 11 Cases because the resolution of the Operatorship Dispute remains under consideration by the Court. Operatorship of the Comanche Assets is a central issue in both these Chapter 11 Cases as well as the Gavilan Cases. Each of the parties agrees that the right to operate the Comanche Assets is an important right, and the decision by the Court on the Operatorship Dispute, no matter the outcome, will most assuredly cause each of the parties to review its options, including with respect to the assumption or rejection of the Contracts, and adjust its strategies to maximize the value of all involved bankruptcy estates.

9. Pursuant to section 365(a) of the Bankruptcy Code, a trustee or debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard by which a debtor's decision to reject or assume an executory contract is reviewed is the business judgment rule. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019); *see also Richmond Leasing Co. v. Capital Bank, N.A. (In re Richmond Leasing Co.)*, 762 F.2d 1303, 1309 (5th Cir. 1985) (applying the business judgement rule). The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Bartlinski v. Sanchez*, 39 F. Supp. 3d 862, 866 (S.D. Tex. 2014) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). "In applying the business judgment rule in deciding whether to grant a debtor's motion to reject a contract a court is not adjured to blindly accept, but rather only to show proper

---

stay in the Gavilan Cases to the extent the proposed treatment of any Contract impermissibly affects Gavilan's rights thereunder.

5

deference to the business judgment of the debtor's management." *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 426 (Bankr. N.D. Tex. 2009) (citing *In re Richmond Leasing*, 762 F.2d at 1309). Furthermore, "[i]n reviewing a trustee's or debtor-in-possession's decision to assume [or reject] an executory contract …, a bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession." *Id.* at 427 (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) (alteration in original)).

10. Indeed, the Debtors have yet to make a showing that the assumption or rejection of the Contracts, much less the assumption or rejection of each of the contracts listed in the Executory Contract Notice, is an appropriate application of the Debtors' business judgment, especially as it relates to the Comanche Assets. Moreover, however deferential the business judgment rule may be to the Debtors, it would be difficult to contend that the Debtors' management has made an informed decision regarding whether to assume or reject the Contracts, without considering the impact of this Court's ruling in the Operatorship Dispute. Operatorship of the Comanche Assets is a key component of the value of the Comanche Assets. Without the Operatorship Dispute being decided, the Debtors will not be able to make a convincing case that the decisions under section 365 are adequately "informed" and in "good faith." Accordingly, the Debtors' proposed rejection and assumption of the Contracts should not be considered until the Operatorship Dispute is resolved.

### B. The Debtors Have Not Satisfied The Requirements Of Section 365(b)

11. As referenced above, the Debtors propose to assume several of the Contracts with Gavilan. Pursuant to section 365(b) of the Bankruptcy Code,

> [i]f there has been a default in an executory contract or unexpired lease of the debtor, the [debtor-in-possession] may not assume such contract or lease unless, … the [debtor-in-possession]—
>
> (A) cures, or provides adequate assurance that the [debtor-in-possession] will promptly cure, such default [subject to certain exceptions] …;
>
> (B) compensates, or provides adequate assurance that the [debtor-in-possession] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

12. While there is no set definition of "adequate assurance of future performance," courts have assessed numerous factors in the analysis. "[T]o determine if the debtor in possession has provided adequate assurance of future performance, we have held that courts must look to factual conditions, including consideration of whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 438-39 (5th Cir. 2002) (internal quotation marks and citation omitted); *see also In re Richmond Leasing*, 762 F.2d at 1310 (discussing the same factors) (citations omitted).

13. As an initial matter, the Debtors have not responded to Gavilan's Informal Requests for additional information regarding the Contracts, and Gavilan is in the process of reviewing ongoing discovery in connection with the *Debtors' Emergency Motion Pursuant to Section 365(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order (A) Approving a*

*Settlement with Certain Midstream Counterparties and (B) Authorizing the Assumption of Certain Related Contracts, as Amended* [Docket No. 1309] (the "**Settlement Motion**"). Accordingly, Gavilan reserves the right to supplement this Objection based on additional information provided by the Debtors.

14. In addition, as described in the Settlement Motion, the Debtors have proposed to reject certain of the processing and transportation agreements currently handling Gavilan's production even though the Debtors are also proposing to assume the Gavilan marketing agreements which require Gavilan's consent to modify such processing and transportation arrangements. This proposed result appears untenable under the Bankruptcy Code. If the Debtors are allowed to reject, and thus breach, such processing and transportation agreements, among others, the Debtors cannot purport to be in compliance with, and thus assume, Gavilan's marketing agreements.

15. Based on this and other facts currently available to Gavilan, including the Debtors' apparent lack of liquidity[3] and ongoing uncertainty regarding the proposed go-forward management of the Debtors, Gavilan objects to the proposed assumption of the Contracts until such time as the Debtors can cure any existing defaults and provide adequate assurance of future performance under the Contracts the Debtors propose to assume.

**RESERVATION OF RIGHTS**

16. Based on the foregoing, Gavilan reserves the right to amend or supplement this Objection, raise additional objections to the Debtors' proposed treatment of the Contracts, seek

---

[3] As part of Sanchez's proposed Settlement Agreement (as defined in the Settlement Motion), Sanchez will immediately receive $8 million upon Court approval of the Settlement Agreement. This, they say, is "crucial to providing the needed liquidity." Settlement Motion, ¶ 3. They further state that the relief requested in the Settlement Motion and Settlement Agreement is "critical to the occurrence of the Effective Date." *Id.* at ¶ 4.

formal discovery, and to seek any other or further relief. In addition, because Gavilan is a debtor in the Gavilan Cases, Gavilan reserves all rights to assume or reject its own executory contracts pursuant to section 365 of the Bankruptcy Code, including certain of those contracts which the Debtors purport to assume or reject pursuant to the Plan and Confirmation Order, and to seek enforcement of the automatic stay in the Gavilan Cases.

## CONCLUSION

Based on the foregoing, Gavilan respectfully requests that the Court defer the Debtors' requests to reject or assume the Contracts until a more appropriate time, and grant such other and further relief as the Court may deem just and proper.

Dated: June 22, 2020
      Houston, Texas

                                                /s/ Alfredo R. Pérez
                                                Alfredo R. Pérez

**WEIL, GOTSHAL & MANGES LLP**
Alfredo R. Pérez (TX 15776275)
Brenda Funk (TX 24012664)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Emails:  Alfredo.Perez@weil.com;
         Brenda.Funk@weil.com

- and -

Garrett Fail (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Garrett.Fail@weil.com

*Proposed Attorneys for Gavilan Resources, LLC*

9

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2020, a true and correct copy of the foregoing objection was served by e-mail on the parties who receive electronic notice in these cases pursuant to the Court's ECF filing system.

                                                */s/ Alfredo R. Pérez*
                                                Alfredo R. Pérez