IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| SANCHEZ ENERGY CORPORATION, *et al* | § § § § | CASE NO: 19-34508 |
| SN PALMETTO, LLC | § § | CASE NO: 19-34509 |
| SN MARQUIS LLC | § § | CASE NO: 19-34510 |
| SN COTULLA ASSETS, LLC | § § | CASE NO: 19-34511 |
| SN OPERATING, LLC | § § | CASE NO: 19-34512 |
| SN TMS, LLC | § § | CASE NO: 19-34513 |
| SN CATARINA, LLC | § § | CASE NO: 19-34514 |
| ROCKIN L RANCH COMPANY, LLC | § § | CASE NO: 19-34515 |
| SN EF MAVERICK, LLC | § § | CASE NO: 19-34516 |
| SN PAYABLES, LLC | § § | CASE NO: 19-34517 |
| SN UR HOLDINGS, LLC, | § § | CASE NO: 19-34518 |
|   Debtors. | § § § | **Jointly Administered** CHAPTER 11 |

## MEMORANDUM OPINION

Before the Court is Delaware Trust Company's ("DTC") "Motion for Allowance and Payment of Administrative Expense Claim" ("Motion"). (ECF No. 1528). The Motion seeks allowance of an administrative expense claim under 11 U.S.C. § 503, for fees incurred by DTC as the Indenture Trustee for certain senior notes issued by the debtor, Sanchez Energy Corporation. Mesquite Energy, Inc., the renamed reorganized debtor, opposes the Motion because DTC's actions on behalf of the Senior Noteholders (the "Noteholders") did not substantially contribute to

the Sanchez bankruptcy. For the reasons that follow, DTC's administrative expense claim is allowed in part and disallowed in part.

## BACKGROUND

Sanchez and its affiliates filed petitions under chapter 11 of the Bankruptcy Code on August 11, 2019. (ECF No. 1). Prior to bankruptcy, Sanchez issued an Indenture, dated June 13, 2013, for the 7.75% Senior Notes Due 2021, and an Indenture, dated June 27, 2014, for the 6.125% Senior Notes Due 2023. (ECF No. 1626 at 2). DTC is the successor Indenture Trustee under both Indentures. (ECF No. 1528 at 1).

On April 30, 2020, the Court entered its "Order Approving Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates" ("Confirmation Order"). (ECF No. 1212). The Sanchez Plan calls for payment in full in cash for holders of allowed Administrative Claims. The Plan defines "Administrative Claim" as claims "constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) and entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code." (ECF No. 1528 at 3).

Sanchez listed the Indentures on its schedule of rejected executory contracts. (ECF No. 1188). The rejection schedule was not filed until Sanchez submitted its plan supplement on April 29, 2020. The rejection occurred as of June 30, 2020, the Effective Date of the Sanchez plan.

Under the Indentures, DTC is entitled to be paid its fees and expenses. The Indentures contemplate allowance of the fees and expenses as an administrative expense in a bankruptcy case. (ECF No. 1528 at 3). Section 7.07 of each Indenture states that:

> The Company shall pay to the Trustee from time to time such reasonable compensation as the Company and the Trustee may agree in writing for the Trustee's acceptance of this Indenture and services hereunder . . . . The Company shall reimburse the Trustee promptly upon request for all

> reasonable disbursements, advances and expenses incurred or made by it in addition to the compensation for its services. Such expenses shall include the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel.

(ECF No. 1528 at 5). The Indentures provide for post-petition fees and expenses in the event of a bankruptcy case:

> When the Trustee incurs expenses or renders services after an Event of Default . . . occurs, the expenses and the compensation for the services (including the fees and expenses of its agents and counsel) are intended to constitute expenses of administration under any Bankruptcy Law.

(ECF No. 1528 at 5). The parties recognize that this language in the Indentures does not replace the Court's authority to grant or deny administrative claims. However, the contractual language evidences the parties' pre-petition intent regarding the treatment of Trustee fees and expenses in bankruptcy.

DTC filed its proof of claim on January 6, 2020 seeking $928,345.00. (ECF No. 1626 at 2). The proof of claim is based on three categories of fees and expenses. First, it seeks payment of $507,108.74 owed to Bryan Cave Leighton Paisner LLP ("Bryan Cave") as legal counsel to DTC. (ECF No. 1626 at 2). Second, the proof of claim includes $235,262.19 of fees owed to Arent Fox LLP ("Arent Fox") as legal counsel to DTC. (ECF No. 1626 at 2). DTC changed counsel from Arent Fox to Bryan Cave in November 2019. Finally, the proof of claim seeks compensation for $185,974.27 in fees and expenses incurred directly by DTC. (ECF No. 1626 at 2). The Motion seeks allowance of the full amount of DTC's proof of claim as an administrative expense pursuant to §§ 503(b)(1)(A) and 507(a)(2). The fees were incurred post-petition, but before rejection of the Indentures.

Between the petition date and the rejection of the Indentures, DTC filed two proofs of claim on behalf of the Noteholders. (ECF No. 1730 at 36). DTC also reviewed docket filings in the

Sanchez case, as well as Sanchez's schedules. (ECF No. 1730 at 37). Arent Fox reviewed the first day motions on DTC's behalf. (ECF No. 1730 at 38). DTC was a member of the Official Committee of Unsecured Creditors (the "Committee"). (ECF No. 1730 at 39). DTC joined the Ad Hoc Group of Unsecured Noteholders in an objection to the DIP motion. (ECF No. 1730 at 41). Regarding formulation of the plan, DTC was involved in "representing the [Noteholders] as part of the Committee . . . . [DTC] worked with the other members of the Committee and the Committee counsel to work through the plan, the debtor's disclosure statement as well, to try to get to a confirmable plan. And one of those things was pushing some litigation that would normally have happened during the bankruptcy case to post-confirmation." (ECF No. 1730 at 47). As part of the plan negotiations, DTC also agreed to serve as the Lien-Related Creditor Representative because it had experience serving as a fiduciary and already represented the largest group of unsecured creditors. (ECF No. 1730 at 49).

For its efforts, DTC contends it is entitled to an administrative expense claim under 11 U.S.C. § 503(b)(1)(A). (ECF No. 1528 at 4). DTC argues it is entitled to administrative priority because Sanchez "knowingly and voluntarily accepted" DTC's services that benefitted Sanchez's estates (the "Estate"). (ECF No. 1528 at 4). DTC makes this argument notwithstanding § 503(b)'s requirement that, to be entitled to administrative priority, indenture trustees must substantially contribute to a debtor's estate. (ECF No. 1674 at 3–5); *see also* 11 U.S.C. § 503(b)(3)(D), (4), (5). Alternatively, DTC asserts that the Indentures were executory contracts under which DTC rendered post-petition performance. (ECF No. 1745 at 7–9). According to DTC, this post-petition performance entitles it to an administrative expense claim for the reasonable value of its post-petition performance—which DTC says is the full amount of its claim. (ECF No. 1745 at 8–9).

In opposition, Mesquite argues that DTC's post-petition actions did not result in a substantial contribution—which Mesquite argues is the applicable standard—to Sanchez's estates. (ECF No. 1626 at 4–6). Mesquite also takes issue with DTC's characterization of the Indentures as executory contracts. (*See, e.g.*, ECF No. 1626 at 8–9). However, Mesquite concedes that DTC may be entitled to an administrative expense claim for its efforts as a "conduit" for the Noteholders. (ECF No. 1744 at 26).

After a hearing and the completion of the parties' briefing, the Court took the matter under advisement. This Memorandum Opinion disposes of DTC's Motion.

## JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 (2020). The allowance or disallowance of a proof of claim against the estate is a core matter as defined in 28 U.S.C. § 157(b)(2)(B). This case was referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

DTC seeks administrative priority for its claim of $928,345.20. Administrative priority is warranted, DTC argues, because its expenditures represent actual and necessary expenses that resulted in a benefit to the Estate. Mesquite disagrees with DTC's request on two points. First, Mesquite contends that DTC asks this Court to apply the incorrect standard in determining whether DTC is entitled to administrative priority. Second, under the correct standard, DTC's services do not qualify for administrative priority.

DTC is entitled to an administrative expense claim for part of the amount requested. However, DTC's claim is made up in large part of fees and expenses that did not result in a substantial contribution to Sanchez's estates. Nevertheless, because a portion of the fees and

expenses substantially contributed to the Estate, DTC is allowed an administrative expense claim for $6,050.00.

"Under § 507(a), administrative expenses are given priority over all other unsecured claims, other than domestic support obligations and certain trustee expenses not relevant in this case." *In re American Coastal Energy, Inc.*, 399 B.R. 805, 808 (Bankr. S.D. Tex. 2009). Section 503(b) of the Bankruptcy Code sets out the requirements of allowed administrative expense claims against the estate. However, "[a]dministrative expenses entitled to first priority status are not necessarily confined to those enumerated at 11 U.S.C. § 503(b)." *In re Al Copeland Enters., Inc.*, 991 F.2d 233, 238 (5th Cir. 1993) (quoting *In re Flo-Lizer, Inc.*, 107 B.R. 143, 145 (Bankr. S.D. Ohio 1989)). In a chapter 11 case, the debtor is generally required to pay administrative expenses in full on the effective date of the plan of reorganization. *See* 11 U.S.C. § 1129(a)(9)(A). Accordingly, Article II.A of the Sanchez plan requires full payment of allowed administrative claims.

DTC argues that the general standard of § 503(b)(1)(A) governs the allowance of its purported administrative expense claim. Under that provision, administrative expenses include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To qualify under § 503(b)(1)(A), an expense "must have been of benefit to the estate and its creditors." *In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998). "The benefit requirement is not an additional element to a § 503(b)(1)(A) claim, but rather a means for testing whether an expense is truly 'necessary.'" *Am. Coastal Energy*, 399 B.R. at 809 (quoting *H.L.S. Energy*, 151 F.3d at 437).

However, § 503(b)(3)–(5) sets a higher standard for when indenture trustees and related professionals are entitled to administrative priority. An indenture trustee may recover "actual,

necessary expenses" when the trustee makes "a substantial contribution in a case under chapter 9 or 11" of the Bankruptcy Code. *Id.* at § 503(b)(3)(D). Section 503(b)(5) also grants administrative priority for "reasonable compensation for services rendered by an indenture trustee in making a substantial contribution . . . based on the time, the nature, the extent, and the value of such services." § 503(b)(5). Finally, § 503(b)(4) allows "reasonable compensation for professional services rendered by an attorney . . . of an entity whose expense is allowable under [§ 503(b)(3)] . . . and reimbursement for actual, necessary expenses incurred by such attorney." § 503(b)(4).

### A. The Administrative Priority Standard Applicable to Indenture Trustees

It is a well settled rule of statutory construction that specific provisions govern general ones. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Thus, it is the substantial contribution standard, not the benefit of to the estate standard, that determines whether an indenture trustee can be paid on an administrative basis. DTC argues that § 503(b)(1)(A) applies because "an indenture trustee's role becomes heightened, not diminished, in bankruptcy," and because "a debtor in bankruptcy is required to have an indenture trustee." (ECF No. 1674 at 2). The Court recognizes the critical role of indenture trustees in chapter 11 reorganizations. However, Congress established a specific standard for indenture trustee compensation in § 503(b)(3) and (5). It is not within the power of this Court to re-write the Bankruptcy Code.

Compared to the benefit to the estate standard, "the standard for recovering on an application for a substantial contribution administrative expense is high." *See In re S & Y Enters., LLC*, 480 B.R. 452, 461 (Bankr. E.D.N.Y. 2012). A contribution is substantial if it is "considerable in amount, value, or worth." *In re DP Partners Ltd. P'ship*, 106 F.3d 667, 673 (5th Cir. 1997).

"Services which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress of reorganization." *In re Richton Int'l Corp.*, 15 B.R. 854, 855 (Bankr. S.D.N.Y. 1981). "The policy of authorizing such compensation is to promote meaningful creditor participation in the reorganization process." *In re Calumet Realty Co.*, 34 B.R. 922, 926 (Bankr. E.D. Pa. 1983). The applicant seeking administrative priority must show a causal relationship between the services and the substantial contribution. *In re American Plumbing & Mech., Inc.*, 327 B.R. 273, 279-80 (Bankr. W.D. Tex. 2005).

DTC believes that the mere existence of § 503(b)(3)–(5) does not preclude an indenture trustee from seeking reimbursement under § 503(b)(1)(A). If DTC is correct, § 503(b)(3)–(5) becomes entirely superfluous. The substantial contribution standard that applies to § 503(b)(3)–(5) is higher than that of § 503(b)(1)(A). If compensation is available under the lower standard of § 503(b)(1)(A), no indenture trustee would seek an administrative expense under § 503(b)(3) or (b)(5). Yet those provisions explicitly pertain to indenture trustees. DTC's reading would render the portions of § 503(b) that refer to indenture trustees and their attorneys mere surplusage. Where expenses and reimbursements for an indenture trustee's services could conceivably be provided administrative status under § 503(b)(3)(D) or (b)(5), an indenture trustee cannot evade the substantial contribution standard by looking to § 503(b)(1)(A).

   **B. The Vast Majority DTC's Application Does Not Pass a Substantial Contribution Test**

Given that DTC is constrained to seek administrative priority via § 503(b)(3)(D), (4), and (5), there are four categories of administrative expenses under which DTC's claim might fall. First, DTC can recover its "actual, necessary *expenses* . . . incurred . . . in making a substantial contribution in" Sanchez's bankruptcy case. § 503(b)(3)(D) (emphasis added). Second, DTC, in its role as the indenture trustee, can recover "reasonable *compensation* for services rendered . . . in

making a substantial contribution" in the bankruptcy. § 503(b)(5) (emphasis added). Third, DTC's professionals (*i.e.,* Arent Fox and Bryan Cave) can recover "reasonable *compensation* for professional services rendered . . . [to] an entity whose expense is allowable under [§ 503(b)(3)(D)] . . . and reimbursement for actual, necessary expenses incurred" by the professional. § 503(b)(4) (emphasis added). Finally, DTC, as a member of the Unsecured Creditors Committee, can recover *expenses* "incurred in the performance of the duties of" the Committee. § 503(b)(3)(F). Under this final category, however, DTC's professionals are *not* entitled to "reasonable compensation" for services rendered to DTC relating to DTC's service as a Committee member. *See* § 503(b)(4). Nor does § 503 afford DTC "reasonable compensation" for its service as a member of the Committee. *In re Worldwide Direct, Inc.*, 334 B.R. 112, 126 (Bankr. D. Del. 2005) ("[S]ection 503(b)(3)(F) does not allow payment of the hourly wages of a Committee member.").

DTC bore the burden of establishing it substantially contributed to Sanchez's estates, thereby entitling DTC to an administrative expense. *In re General Homes Corp. FGMC, Inc.*, 143 B.R. 99, 103 (Bankr. S.D. Tex. 1992) (citing *In re Buttes Gas & Oil Co.*, 112 B.R. 191, 194 (Bankr. S.D. Tex. 1989)). A "substantial contribution" is an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). Whether the estate received an "actual and demonstrable benefit" is determined in hindsight. *Worldwide Direct*, 334 B.R. at 121 (quoting *In re Granite Partners*, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997)). To be entitled to administrative priority, DTC had to link the fees and expenses incurred to the purported substantial contribution. *DP Partners*, 106 F.3d at 673 ("[Section 503] also requires the judge to distinguish between expenses incurred in making a substantial contribution to the case and expenses lacking

that causal connection, the latter being non-compensable."); *accord Worldwide Direct*, 334 B.R. at 121 (quoting G*ranite Partners*, 213 B.R. at 447) ("[T]he applicant must show a 'causal connection' between the service and the contribution.").

The briefing and argument surrounding the Motion stresses the applicable standard for the allowance of administrative fees for indenture trustees, as well as the general importance of indenture trustees both inside and outside bankruptcy. Yet the factual briefing regarding how DTC's services substantially contributed to the Sanchez case can be reduced to a handful of sentences.

First, DTC argues that performance of the Indentures allowed Sanchez to comply with federal securities law. (ECF No. 1528 at 7). Second, the Trustee's services "materially streamlin[ed] the claims and noticing process by having one representative for approximately $1.75 billion aggregate principal amount in publicly traded claims instead of multiple, and potentially constantly shifting, parties." (ECF No. 1528 at 7). Third, DTC filed proofs of claim on behalf of the Noteholders. (ECF No. 1528 at 8). Fourth, DTC argues that Sanchez benefitted from DTC's decision not to object to the plan of reorganization. (ECF No. 1528 at 9). Fifth, DTC claims that its role in negotiating the litigation trust agreement as a member of the Committee was a substantial contribution to Sanchez's estates. (ECF No. 1745 at 8). Along with its role in aiding the negotiation of the liquidation trust agreement, DTC asserts that it substantially contributed to Sanchez's reorganization by participating in the selection of Sanchez's Chief Restructuring Officer. (ECF No. 1745 at 8). Finally, DTC contends it substantially contributed to Sanchez's reorganization by agreeing to serve as the Lien-Related Creditor Representative. (ECF No. 1528 at 8).

DTC's arguments regarding the general necessity of indenture trustees are accurate, but unavailing. While indenture trustees play a vital role in capital markets, § 503(b) makes clear that an indenture trustee, and its professionals, are not entitled to administrative priority by virtue of the trustee's position alone. *See In re Northwestern Corp.*, 365 B.R. 453, 456 (D. Del. 2007) ("[A]n indenture trustee is not entitled to compensation for the services provided by its professionals, unless the indenture trustee's actions substantially contributed to the debtor's case."). Instead, an indenture trustee must show the services rendered provided a substantial benefit to the bankruptcy case. *Id.* Pointing out the importance of indenture trustees to capital markets, or their necessity under federal securities law, does not explain how a particular indenture trustee substantially benefitted a bankruptcy case. *See Buttes Gas & Oil*, 112 B.R. at 196 ("The Trust Indenture Act sets forth duties and responsibilities of the indenture trustee and has no bearing on the decision by Congress via § 503 . . . . to receive compensation for services rendered on behalf of debenture holders in a bankruptcy case, the substantial contribution test of § 503 must be satisfied."). Thus, DTC's service as an indenture trustee during Sanchez's bankruptcy, without more, was not a substantial contribution.

The second purported substantial contribution DTC points to is its practical assumption of the role of noticing agent for the Noteholders. DTC's noticing efforts can be separated into two categories. First, a portion of DTC's efforts essentially fulfilled Sanchez's statutory (or bankruptcy rule) noticing obligations. The remainder of DTC's noticing efforts involved its general communication with Noteholders—essentially, DTC served as a go-between for Sanchez and individual Noteholders.

Mesquite concedes DTC may assert an administrative priority claim based, in part, on both categories of noticing services. (ECF No. 1744 at 24).[1] However, Mesquite's agreement does not itself entitle DTC to an administrative expense claim. DTC must still demonstrate these efforts resulted in a substantial contribution to Sanchez's reorganization. Of these efforts, DTC is entitled to administrative priority to the extent it fulfilled Sanchez's notice obligations. DTC's service as a go-between, however, does not entitle DTC to an administrative priority claim.

The Bankruptcy Code, along with the Federal Rules of Bankruptcy Procedure, imposed obligations on Sanchez to notify the Noteholders of various events during Sanchez's bankruptcy. *See, e.g.,* 11 U.S.C. § 342(a); FED. R. BANKR. P. 2002. The Indentures delegated this notice responsibility to DTC. (*See* ECF No. 1528-2 at 98). While the terms of the Indenture have no direct bearing on DTC's entitlement to administrative priority, *In re AppliedTheory Corp.*, 312 B.R. at 239 (Bankr. S.D.N.Y. 2004); *see also Buttes Gas & Oil*, 112 B.R. at 196, the Indentures evidence Sanchez's intent to have DTC provide the Noteholders with notice of Sanchez's bankruptcy. Considering the Indentures and Sanchez's acquiescence, Sanchez essentially requested DTC's performance of Sanchez's statutory noticing obligations with respect to the Noteholders. *Cf. Worldwide Direct*, 334 B.R. at 123 (finding that an indenture trustee's assistance in drafting a plan of reorganization was a "substantial contribution" because the trustee assisted at the request of the unsecured creditors committee). Had DTC not fulfilled Sanchez's noticing obligation, Sanchez itself would have had to give notice to each Noteholder. *Cf. id.* ("In the absence of [the indenture trustee's] involvement, counsel for the Committee or the Debtors would have had to do that work, at the expense of the estate."). Since DTC's efforts relieved Sanchez of its noticing responsibilities (and associated expenses), DTC substantially contributed to Sanchez's

---

[1] Specifically, Mesquite says that DTC may be entitled to an administrative priority claim for: "(i) communicating with noteholders . . . (iii) sending notices to noteholders." (ECF No. 1744 at 24).

reorganization by directly saving Sanchez a substantial expenditure of estate funds related to providing notice. *See id.*

Nothing in the Code nor the Indentures required DTC to provide individual Noteholders with updates regarding the progress of Sanchez's reorganization. Other bankruptcy courts have rejected indenture trustees' requests for administrative priority based on the trustees' efforts to keep noteholders informed. *See, e.g., Buttes Gas & Oil*, 112 B.R. at 194–95 (finding that an indenture trustee's communication with 3000 debenture holders regarding the progress of a bankrupty "hardly result[ed] in the substantial contribution envisioned [in] § 503"); *see also Nw. Corp.*, 365 B.R. at 457 (citing *In re Flight Transp. Corp. Litig.*, 874 F.2d 576, 580 (8th Cir. 1989)) ("[The indenture trustee] contends that because it was acting as a fiduciary for the [debenture] holders, it is entitled to compensation for services rendered. However, courts have recognized that protecting the interests of a trust beneficiary may or may not benefit the estate."). Moreover, DTC's general communications with Noteholders are presumed to have been undertaken for the benefit of the Noteholders. *See Lebron*, 27 F.3d at 943 ("The services engaged by creditors, creditor committees and other parties interested in a reorganization are presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization.").[2] Presumably to avoid a fate like other indenture trustees seeking administrative priority, DTC frames these communications as a relief to Sanchez.

---

[2] This presumption is consistent with Michelle Dreyer's, DTC's employee, testimony that:

> "during the . . . bankruptcy, that the indenture trustee is there primarily to ensure that the issuer performs under the notes and to protect the investors, to ensure that they're receiving payments. And . . . to ensure that the noteholders have a voice in the bankruptcy process . . . . *So everything I've done through the pendency of the case was* to educate myself, to understand the issues, and *to be able to represent the noteholders*, and be able to negotiate as part of the Committee with the debtors on behalf of the unsecured creditors."

(ECF No. 1730 at 35:21–36:2; 71:8–12 (emphasis added)).

Essentially, DTC contends it relieved Sanchez of Sanchez's "cumbersome" obligation to keep the Noteholders informed of the progress of Sanchez's bankruptcy. (ECF No. 1528 at 7). A debtor-in-possession has a statutory duty to prepare a disclosure statement and to file various documents. But the Code does not impose a statutory duty to provide interim periodic reports to the debtor's noteholders. The Noteholders were the only beneficiaries of DTC's efforts. *See Buttes Gas & Oil*, 112 B.R. at 194–95. Without evidence of how DTC's "streamlining" benefited Sanchez, as opposed to the Noteholders alone, DTC is not entitled to an administrate expense priority under § 503(b)(3)(D) or (5). *See DP Partners*, 106 F.3d at 673 ("Benefits flowing to only a portion of the estate or to limited classes of creditors are necessarily diminished in weight.").[3]

The Estate, of course, must pay the administrative costs of an official committee. If the Committee chooses to provide interim reports, that is a cost borne by the Estate. DTC was an active member of the Committee. DTC could have encouraged the Committee to maintain communications with its constituents. But, the direct communications between DTC and the Noteholders are compensable only if they amounted to a "substantial contribution." The record is devoid of such evidence.

DTC's and its attorneys' efforts to prepare proofs of claim for the Noteholders cannot support an administrative priority claim. The filing of a proof of claim primarily benefits the claimant. *In re General Electrodynamics Corp.*, 368 B.R. 543, 557 (Bankr. N.D. Tex. 2007); *see also, e.g., Gen. Homes*, 143 B.R. at 103 (denying an indenture trustee's request for administrative priority for fees and expenses incurred in drafting and filing a proof of claim on behalf of

---

[3] Because DTC did not substantially contribute to Sanchez's estates in this respect, DTC's counsel cannot recover professional fees and expenses incurred related to DTC's "streamlining." *See* 11 U.S.C. § 503(b)(4). (*See* ECF Nos. 1212 at 10; 1417 at 1).

noteholders). Although the Court could conceive of a substantial contribution to the Estate from the filing of a proof of claim, none has been demonstrated here.

DTC's decision not to object to Sanchez's plan was not a substantial contribution. Nor does DTC's failure to object to the plan, which did not provide for DTC's compensation, now entitle DTC to an administrative priority claim. Considering that *active participation* in plan negotiations is considered only a "routine activit[y]," not a substantial contribution, *In re M&G USA Corp.*, 599 B.R. 256, 262 (Bankr. D. Del. 2019) (quoting *In re RS Legacy Corp.*, No. 15-10197 (BLS), 2016 WL 1084400, at *4 (Bankr. D. Del. Mar. 17, 2016)), DTC cannot suggest that its choice *not* to participate resulted in a substantial contribution to Sanchez's estates. Within the meaning of § 503(b), a substantial contribution is a "tangible benefit to the estate and to unsecured creditors." *Gen. Homes*, 143 B.R. at 103. The Estate gained nothing "tangible" from DTC's silence.

Nor is DTC entitled to an administrative expense claim for its efforts in drafting the litigation trust agreement. The litigation trust agreement was primarily drafted by the Committee. (ECF Nos. 1238 at 4). Counsel to the Committee was compensated for its legal fees. This agreement was created to establish a trust consisting of all proceeds from Lien-Related Litigation for the benefit of unsecured creditors. (ECF No. 1238 at 5). There is certainly evidence that DTC was an active member of the Committee and—as a Committee Member—performed admirably. But § 503 does not provide for the hourly compensation of committee members, nor for members' *professional* expenses. *See* 11 U.S.C. § 503(b)(3), (4); *Worldwide Direct*, 334 B.R. at 126. It does, however, provide for actual and necessary expenses incurred by committee members. 11 U.S.C. § 503(b)(3)(F). DTC is not entitled to administrative priority for its work, nor for the work

of its professional in drafting of the litigation trust agreement. Nor has DTC offered evidence that it incurred expenses compensable under § 503(b)(3)(F).

DTC's participation in the selection of a Chief Restructuring Officer (CRO) does not entitle it to an administrative priority claim. This selection process was collaborative, as many stakeholders in Sanchez's reorganization were afforded an opportunity to weigh in on Sanchez's CRO decision. (ECF No. 593 at 4–5, 25–26). The appointment of a CRO likely benefited Sanchez. Nevertheless, aside from asserting that it "participated actively" in the selection of the CRO, DTC fails to identify how its participation, specifically, provided a substantial benefit to Sanchez's estate. (*See* ECF No. 1745 at 21); *see also DP Partners*, 106 F.3d 673–74 (noting that a grant of administrative priority based on a substantial contribution requires the applicant to demonstrate a causal connection between the fees and expenses incurred and the "substantial contribution"). Without more, DTC is not entitled to an administrative expense claim for work related to Sanchez's selection of a CRO.

Finally, DTC's decision to serve as Lien-Related Creditor Representative has no bearing on the resolution of DTC's request for an administrative expense claim. The Motion seeks administrative priority for fees incurred up to DTC's acceptance of the role of Lien-Related Creditor Representative. (*See* ECF No. 1528-7 at 2). Because DTC, as the Lien-Related Creditor Representative, has not provided any evidence that it incurred actual and necessary fees and expenses resulting in a substantial contribution, DTC has no relief in § 503(b) for such fees. *See Gen. Homes*, 143 B.R. at 103 (clarifying that the applicant bears the burden of satisfying the requirements of § 503(b)).

Unlike other indenture trustees, the majority of DTC's administrative priority request is not based on actions it took at the direction of other creditors or the Committee. *See, e.g.,*

*Worldwide Direct*, 334 B.R. at 123, 125 (allowing an administrative expense claim for drafting specific plan provisions and engaging in litigation at the direction of the unsecured creditors committee). For the most part, DTC seeks fees and expenses for using its seat at the bankruptcy table. An indenture trustee's performance of tasks it is expected or anticipated to perform does not entitle the trustee to administrative priority. *Cf. id.* (denying an indenture trustee's request for an administrative expense claim based on "routine task[s]"); *accord In re Alumni Hotel Corp.*, 203 B.R. 624, 631 (Bankr. E.D. Mich. 1996), *as amended* (Dec. 30, 1996) ("[E]xtensive participation in a case, without more, does not constitute substantial contribution.") (citing *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989)). Thus, with the exception of DTC's efforts that relieved Sanchez of its statutory noticing obligations, DTC's request for administrative priority is denied.

DTC's fees and expenses that resulted in a substantial contribution to Sanchez's estates are identified in the table below. DTC offered uncontroverted evidence that these fees and expenses were reasonable and necessary. (*See* ECF No. 1730 at 61:6–21; 62:21–63:1; 64:10–16). Mesquite does not dispute the reasonableness nor the necessity of these fees.

| Billing Firm | Date | Billing Professional | Hours | Amount Requested | Description |
|---|---|---|---|---|---|
| DTC | 8/19/2019 | M. Dreyer | 0.3 | $187.50 | Prepare Notice to Holders / Michelle Dreyer |
| DTC | 4/20/2020 | M. Dreyer | 0.3 | $187.50 | Prepare Notice to Holders / Michelle Dreyer |
| DTC | 4/22/2020 | M. Dreyer | 0.3 | $187.50 | Prepare Notice to Holders / Michelle Dreyer |
| Bryan Cave | 11/19/2019 | M.S. Wickouski | 2.00 | $2,100.00 | Review indenture and outline protocol for implementation of holder direction ----- |
| Bryan Cave | 4/15/2020 | C. Rosenbloom | 0.7 | $413.00 | Prepare for drafting of plan/disclosure statement notice to holders including review of plan provisions (0.7) |
| Bryan Cave | 4/16/2020 | C. Rosenbloom | 0.9 | $513.00 | Draft and revise notice to holders regarding plan and disclosure statement (0.9). |
| Bryan Cave | 4/16/2020 | M.S. Wickouski | 0.3 | $327.00 | Conf. regarding preparation of notice to holders |
| Bryan Cave | 4/17/2020 | J.F. Finkelstein | 0.4 | $330.00 | Review notice to holders, related references to correspondence. |
| Bryan Cave | 4/20/2020 | C. Rosenbloom | 0.3 | $177.00 | Attn to email correspondence regarding draft notice to holders to M. Dreyer and internal regarding same; review of docket filings. |
| Bryan Cave | 4/21/2020 | C. Rosenbloom | 0.6 | $354.00 | Update draft Sanchez notices and correspondence regarding same (0.5); update to correspondence (0.1) |
| Bryan Cave | 4/21/2020 | J.F. Finkelstein | 0.4 | $330.00 | Review revised separate notices to holders and transaction correspondence. |

| Bryan Cave | 4/22/2020 | C. Rosenbloom | 0.3 | $177.00 | Attn. to updated notices and correspondence with M. Dreyer (0.1); review Sanchez plan for trustee related comments (0.2) |
| Bryan Cave | 4/22/2020 | J.F. Finkelstein | 0.2 | $165.00 | Review transaction correspondence related to holder notices and delivery information. |
| Bryan Cave | 4/30/2020 | C. Rosenbloom | 0.6 | $354.00 | Sanchez notice to holders preparation including review of order for same (0.6). |
| Bryan Cave | 5/4/2020 | J.F. Finkelstein | 0.30 | $247.50 | Review notices to holders and related documentation. |
| **Totals:** | | | **7.9** | **$6,050.00** | |

## CONCLUSION

DTC's Motion is granted in part and denied in part. DTC is allowed an administrative priority claim of $6,050.00 in fees and its out-of-pocket postage and mailing expenses.

SIGNED 05/03/2021

Marvin Isgur
United States Bankruptcy Judge