United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 12, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 19-34508 |
| **SANCHEZ ENERGY CORPORATION,** *et al.*, | § § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

The Reorganized Debtors seek approval of a settlement with former controlling insiders of Sanchez Energy Corporation under Federal Rule of Bankruptcy Procedure 9019.  The Creditor Representative in Sanchez's Lien-Related Litigation seeks discovery of materials over which the Reorganized Debtors claim attorney-client privilege and work product protection.  For the reasons set forth below, the Reorganized Debtors must immediately produce the documents and communications that were withheld under the attorney-client privilege and the work product doctrine but were shared with Apollo or Fidelity employees.

## BACKGROUND

The Reorganized Debtors seek to settle claims against former controlling insiders (the "Sanchez Parties") for $2 million. (ECF No. 2552).  Because the Lien-Related Litigation has not yet ended, Sanchez's Plan of reorganization requires that the Court approve this settlement pursuant to Federal Rule of Bankruptcy Procedure 9019.  (ECF No. 1205 at 25).

The Creditor Representative objects to the settlement and seeks to "assist the Court" in "carefully scrutiniz[ing] the agreement" between the Reorganized Debtors and the Sanchez Parties.  (ECF No. 2552 at 4).  The Creditor Representative argues that it cannot evaluate the settlement without access to documents and communications over which the Reorganized Debtors claim privilege.  (ECF No. 2552 at 3–4).  The materials the Creditor Representative seeks were

shared between (a) Mesquite Energy, Inc.'s (the successor to Sanchez Energy Corporation) board members who Apollo Management Holdings, L.P. and Fidelity Management & Research Company LLC appointed pursuant to the Plan and (b) employees of Apollo and Fidelity who are in no way affiliated with Mesquite. (ECF No. 2552 at 3, 7). The Reorganized Debtors object by alleging that the privilege was not waived when Mesquite board members shared the materials with employees of their designating shareholders. (ECF No. 2568 at 4).

On October 19, 2022, the Court directed (i) the Creditor Representative to file a response to the Reorganized Debtors' privilege arguments and (ii) the Reorganized Debtors to file their privilege log. (ECF No. 2576 at 4–5, 21). The Creditor Representative filed a response, and the Reorganized Debtors filed a sur-reply. (ECF Nos. 2586; 2590-3). At the Court's direction, the Reorganized Debtors submitted the allegedly privileged documents for *in camera* review on December 8, 2022.[1]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

The Reorganized Debtors and the Creditor Representative dispute whether the Reorganized Debtors waived the attorney-client privilege and whether the work product doctrine protects certain communications under federal common law.[2] (ECF Nos. 2586; 2590-3).

---

[1] Additional facts concerning the Lien-Related Litigation are set forth in the memorandum opinion issued July 22, 2022. (ECF No. 2501).

[2] The Reorganized Debtors apparently concede that federal common law applies: "Because there is a dearth of federal common law . . .the Court can, and should, consider Delaware law . . . ." (ECF No. 2590-3 at 4). The Court interprets this to mean that the Reorganized Debtors concede the application of federal common law, but the Court should nonetheless apply Delaware law because federal common law offers little guidance.

2 / 13

I.    **ATTORNEY-CLIENT PRIVILEGE**

The parties do not dispute whether the attorney-client privilege attached to communications between Mesquite's board members and Mesquite's counsel.[3] (*See* ECF Nos. 2586; 2590-3). Instead, they dispute whether Mesquite waived the privilege by sharing those communications

---

Federal common law applies. Federal common law of privilege applies to a mix of federal and state law claims. *See Maxus Liquidating Trust v. YPF, S.A. (In re Maxus Energy Corp.)*, No. 16-11501, 2021 WL 3619900, at *2 (Bankr. D. Del. Aug. 16, 2021) ("If there is a mix of federal and state law claims, then federal common law privilege rules apply."); *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557, 560 (S.D.N.Y. 1986) ("When evidence that is the subject of an asserted privilege is relevant to both federal and state law claims, the courts have consistently held that federal law governs the privilege.").

The 9019 motion references Section IX of Exhibit D of the Plan Supplement, which references the claims the Creditors' Committee intended to bring under the Creditors' Committee Related Party Transactions Standing Motion. (ECF Nos. 2533 at 6; 1148 at 11–12; 1032). The proposed complaint in the Standing Motion includes claims for avoidance and recovery of constructive fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550. (ECF No. 1032-4 at 17–19). Thus, the claims the Reorganized Debtors wish to settle with the Sanchez Parties include federal causes of action. Federal common law applies.

[3] Attorney-client privilege is meant to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *United States v. El Paso Co.*, 682 F.2d 530, 538 n.8 (5th Cir. 1982) ("[T]he purpose of the attorney-client privilege is to promote the flow of information to the attorney to enable him to give informed legal advice . . . ."). In order for attorney-client privilege to attach to a communication, the client must show "(1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Murra*, 879 F.3d 669, 681–82 (5th Cir. 2018) (quoting *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)); *see Miniex v. Houston Hous. Auth.*, No. CV 4:17-00624, 2019 WL 2524918, at *3 (S.D. Tex. Mar. 1, 2019); *Fisher v. Halliburton*, No. CV H-05-1731, 2009 WL 10694752, at *1 (S.D. Tex. June 9, 2009) ("The Fifth Circuit has defined the attorney-client privilege as follows: '(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except that the protection be waived.'" (quoting *El Paso Co.*, 682 F.2d at 538)); *Pallares v. Kohn (In re Chevron Corp.)*, 650 F.3d 276, 289 (3d Cir. 2011) ("In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.") (cleaned up).

Corporations, like individuals, are entitled to privileged communications with their counsel, but "complications in the application of the privilege arise when the client is a corporation." *Upjohn*, 449 U.S. at 390. The privilege extends to the communications of a corporation's employees with the corporation's counsel. *Fisher*, No. CV H-05-1731, 2009 WL 10694752, at *2 ("In a corporate setting, the privilege extends to any employee of the corporation who, on instructions from a superior, communicates with counsel—inside or outside of the corporation." (citing *Upjohn*, 449 U.S. at 394–95)); *Miniex*, 2019 WL 2524918, at *3 ("Generally, the attorney-client privilege extends to any employee communicating on matters within the scope of his or her employment when that employee is aware that he or she is being questioned in confidence in order for his or her employer to obtain legal advice." (citing *Upjohn*, 449 U.S. at 394)). *Cf. DataTreasury Corp. v. Wells Fargo & Co.*, 2009 WL 10742271, at *2 (E.D. Tex. Nov. 23, 2009) ("Generally, attorney-client communications between a corporation and its counsel remain privileged if the corporation limits dissemination to a board of directors or to employees on a 'need to know' basis.").

with individuals at Apollo and Fidelity. Under the Plan, Apollo and Fidelity are entitled to designate two of the three members of Mesquite's board. (ECF No. 1394 at 24).

Federal common law applies to the waiver of attorney-client privilege. *See Krys v. Paul, Weiss, Rifkind, Wharton, & Garrison LLP (In re China Med. Techs., Inc.)*, 539 B.R. 643, 651 (S.D.N.Y. 2015) ("[B]oth the existence and applicability of the privileges asserted—including the questions of who holds and has the power to waive the privilege—are governed by United States privileges law."); *Fitzpatrick v. Am. Intern. Group, Inc.*, 272 F.R.D. 100, 105 (S.D.N.Y. 2010) (finding that Rule 501 answers "who holds the privilege, the factual premises for invoking the privilege, whether the privilege may be waived, and, if so, by whom and under what circumstances.").

Attorney-client privilege is waived when privileged information is disclosed to a third party. *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982) ("To retain the attorney-client privilege, the confidentiality surrounding the communications made in that relationship must be preserved. . . . [A] breach of confidentiality forfeits the client's right to claim the privilege."); *Fisher v. Halliburton*, No. CV H-05-1731, 2009 WL 10694752, at *2 (S.D. Tex. June 9, 2009) ("[T]he privilege may be waived through voluntary—and sometimes involuntary—disclosure to a third person lacking a common legal interest."); *Green v. Crapo*, 62 N.E. 956, 959 (Mass. 1902) (Holmes, J.) ("The privacy for the sake of which the privilege was created was gone by the appellant's own consent, and the privilege does not remain under such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice."). *Cf. United States v. Murra*, 879 F.3d 669, 682 (5th Cir. 2018) (finding that the disclosure of underlying facts to third parties does not destroy attorney-client privilege with respect to confidential communications about those facts).

A Delaware bankruptcy court recently held that a designating shareholder may waive privilege upon sharing information with its designee. *Maxus Liquidating Trust v. YPF (In re Maxus Energy Corp.)*, No. 16-11501, 2021 WL 856040, at *1 (Bankr. D. Del. Mar. 8, 2021) ("The main question is whether two confidential memoranda that were sent by YPF's counsel to a YPF employee who served as a director and subsequently officer of YPF's subsidiary, Maxus, must be produced. . . . YPF's decision to appoint its employee as a director and officer of Maxus waived the privilege. Thus, the memoranda must be produced . . . ."). Counsel for Maxus's parent company and designating shareholder, YPF, sent two confidential memoranda to a YPF employee who also served as a director and officer of Maxus. *Id.* YPF did not establish that the individual who was both a Maxus director and YPF employee only received privileged information in his capacity as a YPF employee. *Id.* at *2. The court required production. *Id.*

In a subsequent opinion in the same case, the court required Maxus to produce privileged documents that were shared with its directors who were also serving as YPF directors, officers, or employees. *Maxus Liquidating Trust v. YPF, S.A. (In re Maxus Energy Corp.)*, No. 16-11501, 2021 WL 3619900, at *4 (Bankr. D. Del. Aug. 16, 2021). After determining that federal common law applied, the court disagreed with a Delaware Chancery Court opinion (*Kalisman v. Friedman*, C.A. No. 8447–VCL, 2013 WL 1668205 (Del. Ch. Apr. 17, 2013)) holding that a designating stockholder is entitled to the privileged communications to which its designee director is entitled:

> I reject the reasoning of *Kalisman*. The argument that a stockholder is entitled to privileged communications shared with its designee ignores basic principles of the corporate form. Being a director must mean something. If nothing else, it comes with the burden of fiduciary duties. Allowing a stockholder to avoid being subject to fiduciary duties and, at the same time, obtain confidential privileged corporate information through the backdoor from a designee on the board runs counter to my view of the proper application of the corporate form.

*Id.*; *contra Kalisman*, C.A. No. 8447–VCL, 2013 WL 1668205, at *6 ("When a director serves as the designee of a stockholder on the board, and when it is understood that the director acts as the stockholder's representative, then the stockholder is generally entitled to the same information as the director."). Indeed, "treating members of a corporate family as one client fails to respect the corporate form. It is a bedrock principle of corporate law in Delaware and elsewhere that courts must respect entity separateness unless doing so would work inordinate inequity." *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 371 (3d Cir. 2007), *as amended* (Oct. 12, 2007).

The Reorganized Debtors' arguments that the Court should apply Delaware law in this matter are unpersuasive. Delaware law is inapplicable insofar as federal common law governs, and Mesquite has not cited any authority applying federal common law which recognizes that a shareholder is entitled to privileged documents if it has the right to appoint a board member. Mesquite also argues that the Court may look to state law for guidance. (ECF No. 2590-3 at 6). While some courts have looked to state law for assistance, state law is at most a "useful, though not controlling, referent." (*In re LTV Sec. Litig.*, 89 F.R.D. 595, 609 (N.D. Tex. 1981) (citing *Gannet v. First Nat'l Bank of N.J.*, 546 F.2d 1072, 1076 (3rd Cir. 1976), *cert. denied*, 431 U.S. 954 (1977)).

Under federal common law, the Court has no reason to believe that a designating shareholder is entitled to the privileged information of its designated board member. Apollo and Fidelity individuals unaffiliated with Mesquite are third parties to Mesquite and its counsel. The Reorganized Debtors must produce the documents and communications that were withheld under the attorney-client privilege which Mesquite's board members shared with Apollo or Fidelity employees.

## II. WORK PRODUCT DOCTRINE

The parties also disagree whether some of the documents are protected by the work product doctrine. Federal Rule of Civil Procedure 26 protects work product revealing an attorney's mental processes: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A).

The work product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975). While the attorney-client privilege exists to protect confidential communications and maintain the sanctity of the attorney-client relationship, the work-product doctrine exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (citing *United States v. AT & T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). "Documents prepared by an attorney, for example, containing her mental impressions of a meeting with a witness would not be protected by the attorney-client privilege." *Byman v. Angelica Textile Servs. (In re Sadler Clinic, PLLC)*, No. 12-34546, 2015 WL 1830531, at *3 (Bankr. S.D. Tex. Apr. 17, 2015) (citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)). Nevertheless, "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney." *Id.* (citing *Hickman*, 329 U.S. at 510). The party seeking to establish work product must show:

> (1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial;[4] and (3) the materials were

---

[4] Litigation does not have to be imminent. *Brady*, 238 F.R.D. at 442 ("[T]he privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" (quoting *El Paso*, 682 F.2d at 542)); *Sadler Clinic*, No. 12-34546, 2015 WL 1830531,

prepared by or for a party's representative; (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party.

*S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006).

The party asserting a claim of work product has the burden of establishing that a document is work product. *Sadler Clinic*, No. 12-34546, 2015 WL 1830531, at *3 (citing *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985)). Once a court determines that a document is work product, however, the burden shifts "to the party who desires discovery of work product material to satisfy the court that it should have this discovery." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2023 (3d ed. 2010); *Sadler Clinic*, No. 12-34546, 2015 WL 1830531, at *3; *Hodges*, 768 F.2d at 721.

Mesquite contends that of the 42 withheld documents, 24 are protected by the work product doctrine.[5] There is no question that those entries are all documents or tangible things. After reviewing the documents *in camera*, the Court finds that they were all prepared in anticipation of litigation and prepared by or for Mesquite or Mesquite's representative.[6] Having met the burden

---

at *4 ("The proper test for whether a document can be considered work product is whether it was created 'because of' the prospect of litigation.").

[5] Entries 2, 5, 7, 9, 10, 17–23, 27, 28, 30, 31, 32, 35–37, 39–42. The documents pertaining to entries 7, 9, 22, 23, 30, and 42 do not appear to include communications of Mesquite's counsel. This does not mean they are not protected by the work product doctrine. Federal Rule of Civil Procedure 26(b)(3)(A) protects "documents and tangible things that are prepared in anticipation of litigation or for trial **by or for another party** or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added); *see Elec. Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653414, at *4 (E.D. Tex. July 9, 2003) ("It is not dispositive that the documents were prepared by plaintiffs and not by attorneys. Rule 26(b)(3) protects documents prepared by or for a party, as long as they are prepared in anticipation of litigation." (citing *Nobles*, 422 U.S. at 238–39)); *Chouest Offshore Services, LLC v. Superior Energy Services, LLC*, No. CV 04-0446, 2005 WL 8173836, at *2 (E.D. La. July 18, 2005) ("The work-product doctrine prevents either party from gaining an unfair advantage by learning the other party's, or their counsel's, legal strategies and theories." (citing *Binks Mfg. Co. v. Nat'l Presto Indus. Inc.*, 709 F.2d 1109, 1118–19 (7th Cir. 1983))).

[6] The fourth element is not applicable because Mesquite does not argue that the documents are opinion work product. Work product may be "fact work product" or "opinion work product." Fact work product is any material "prepared in anticipation of litigation or for trial by or for another party or its representative" under Rule 26(b)(3)(A) but not the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative"

of establishing that these documents are work product, the burden shifts to the Creditor Representative to show that it is nonetheless entitled to discovery of these documents.

Work product documents may be discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A); *Upjohn*, 449 U.S. at 400 ("The Rule permits disclosure of documents and tangible things constituting attorney work product upon a showing of substantial need and inability to obtain the equivalent without undue hardship.").

Additionally, a party may waive work product protection. Unlike the attorney-client privilege, work product protection "is not waived merely because the material is disclosed to a third party." *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002). Instead, a party who (i) discloses work product to an adversary or (ii) substantially increases the likelihood that an adversary will come into possession of the work product waives the right to claim work product protection. *See Brady*, 238 F.R.D. at 444 ("Waiver of work product protection only results if the work product is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of that material."); *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) ("The work-product doctrine protects an attorney's work from falling into the hands of an adversary, and so disclosure to a third party does not necessarily waive the protection of the work-product doctrine. Rather, the purpose behind the

---

under Rule 26(b)(3)(B). *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487 (W.D. Tex. 2020) (citing *Koenig v. Int'l Sys. & Controls Corp. Sec. Litig. (In re Int'l Sys. & Controls Corp. Sec. Litig.)*, 693 F.2d 1235, 1240 (5th Cir. 1982)). Some courts hold that the substantial need/undue hardship test only applies to fact work product. *See Int'l Sys.*, 693 F.2d at 1240 ("Some courts have provided an almost absolute protection for [opinion work product]."); *see also Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 n.12 (10th Cir. 1998); *New England Health Care Emp. Pension Fund v. Ass'n of Corp. Couns. (In re Qwest Commc'ns Intern. Inc.)*, 450 F.3d 1179, 1186 (10th Cir. 2006).

work-product doctrine requires a court to distinguish between disclosures to adversaries and disclosures to non-adversaries, and it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived." (quoting *Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991))) (cleaned up); *Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304, 307 (E.D. Va. 2004) ("Waiver of the privilege occurs when materials that are otherwise protected work-product are disclosed to someone with interests adverse to the party asserting the privilege.").

Courts have held that disclosure to a *potential* adversary may waive work product protection. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) ("Although work product immunity is not automatically waived by disclosure of protected material to third parties, disclosure does waive protection if it 'has substantially increased the opportunities for *potential* adversaries to obtain the information.'" (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (3d ed. 2010))) (emphasis added); *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 590 (N.D.N.Y. 1989) ("Generally, the work product protection is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a *potential* adversary to obtain the protected information.") (emphasis added); *Ackerman McQueen, Inc. v. Stinchfield*, No. 3:19-CV-3016-X, 2020 WL 7645435, at *4 (N.D. Tex. Dec. 22, 2020), reconsideration denied, No. 3:19-CV-03016-X, 2021 WL 793755 (N.D. Tex. Mar. 2, 2021) ("But such a 'disclosure does waive protection if it has substantially increased the opportunities for potential adversaries to obtain the information.'" (citing *Ecuadorian*, 619 F.3d at 378)); *Brady*, 238 F.R.D. at 444 ("Even if confidential work product is produced to a *potential* adversary under a confidentiality agreement, that will not alter the objective

fact that confidentiality has voluntarily been breached. Under those circumstances, the disclosure is still a waiver of work product immunity.") (citations omitted) (emphasis added); Terra Nova, 212 F.R.D. at 170–71 ("The issue of whether a waiver has occurred has frequently arisen when disclosure of work product is made to a governmental authority usually a law enforcement agency. A waiver will be found if the governmental agency was an adversary, a 'potential adversary' or even just 'stood in an adversarial position' with respect to the disclosing party."); *Neilson v. Union Bank of Cal., N.A.*, No. CV0206942MMMCWX, 2003 WL 27374179, at *5 (C.D. Cal. Dec. 23, 2003) ("[T]he disclosure of work product-protected information to a potential adversary is sufficient to support a finding of waiver." (citing *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 683 (1st Cir. 1997))); *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 470 (N.D. Tex. 2016) ("L-3's submission to the OFCCP at the time that the OFCCP was a potential adversary substantially increased the opportunities for potential adversaries to obtain the information . . . ."); *Am. Standard, Inc. v. Bendix Corp.*, 71 F.R.D. 443, 446 (W.D. Mo. 1976); *Stix Prods., Inc. v. United Merchs. & Mfrs., Inc.*, 47 F.R.D. 334, 338 (S.D.N.Y. 1969) ("The work-product privilege should not be deemed waived unless the disclosure is inconsistent with maintaining secrecy from possible adversaries."); *cf. Westinghouse*, 132 F.R.D. at 390 ("[T]he same does not hold true when a party discloses information to an ally. . . . Disclosing information to an ally may strengthen, rather than destroy, the adversary process, as allies who fortify their cases against their mutual adversary have a greater chance of defeating that adversary.").

The Creditor Representative makes no attempt to argue that it has a substantial need for any of Mesquite's work product. (*See* ECF Nos. 2552; 2586). The Creditor Representative instead alleges that Apollo and Fidelity are adverse to Mesquite, and so Mesquite waived work product protection over any document Mesquite shared with Apollo or Fidelity employees. (ECF No. 2568

at 19). In particular, the Creditor Representative alleges that Apollo and Fidelity aim to maximize their ownership of the Reorganized Debtors through the Lien-Related Litigation currently being litigated in Sanchez's main case. (ECF No. 2586 at 19; Case No. 19-34506). The ownership ratio of the Reorganized Debtors is contingent in part on the value of this settlement. The higher the value, the more shares of stock will be allocated to unsecured creditors. The lower the value, the more shares will be allocated to the DIP Lenders. Apollo and Fidelity are both DIP Lenders. The Creditor Representative contends that the appreciated value of the Reorganized Debtors' stock far exceeds the $2 million settlement. (ECF Nos. 2564 at 20–21; 2586 at 19). Thus, Apollo and Fidelity allegedly have an incentive to settle for an artificially low amount and are adversaries for the purposes of work product protection.

The Sanchez Parties are Mesquite's obvious adversaries in the context of the 9019 motion. If Mesquite's disclosures to Apollo and Fidelity employees caused the materials to come into the Sanchez Parties' possession, then Mesquite clearly waived work product protection. However, Mesquite's disclosures to Apollo and Fidelity did not cause the materials to come into the Sanchez Parties' possession, and so it did not waive work product protection for that reason.

Less obvious is whether Apollo and Fidelity are also Mesquite's adversaries. The Creditor Representative argues that Apollo and Fidelity are Mesquite's adversaries because they want Mesquite to accept an artificially low settlement. If that is true, then Apollo and Fidelity are Mesquite's adversaries insofar as their interests conflict with Mesquite's interests to obtain the highest possible settlement. Given the Plan's structure of the Lien-Related Litigation, the potential to split ownership of the Reorganized Debtors with unsecured creditors, and shifts in the oil and gas markets since early 2020, the Creditor Representative's theory that Apollo and Fidelity's interests conflict with Mesquite's interests are plausible; there is a significant chance that Apollo

and Fidelity can obtain an economic benefit through an artificially low settlement.[7] That makes Apollo and Fidelity *potential* adversaries to whom work product has been disclosed. *See Nobles*, 422 U.S. at 239 n.14 (determining that work product waiver depends on the circumstances of each case).

Mesquite knew of the potential for adversity with Apollo and Fidelity before it began settlement discussions with the Sanchez Parties. When Mesquite's board members shared documents protected by the work product doctrine with third parties at Apollo and Fidelity, they ran the risk of waiving work-product protection. The Reorganized Debtors must produce the documents that were withheld under the work product doctrine which Mesquite's board members shared with Apollo or Fidelity employees.

The truth may be that the settlement is in the Reorganized Debtors' best interest; the disclosure of these documents is in furtherance of the search for the truth, whichever side prevails.

## CONCLUSION

A separate order will be entered.

SIGNED 12/12/2022

_____
Marvin Isgur
United States Bankruptcy Judge

---

[7] The Court emphasizes that this potential is grounded in the realities of this case. It is not tenable for a party to successfully argue work product waiver simply by alleging implausible facts about adversarial positions between other parties. If the Reorganized Debtors' current value is such that it makes economic sense for Apollo and Fidelity to desire a lower settlement price, then Apollo and Fidelity's interests undoubtedly diverge from Mesquite's.