**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | Case No. 19-34508 (MI) |
| Debtors. | (Jointly Administered) |

**MOTION FOR CERTIFICATION OF**
**DIRECT APPEAL TO COURT OF APPEALS**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The Reorganized Debtors' service address is 700 Milam Street, Suite 600, Houston, Texas 77002.

Pursuant to 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8006, Appellants, (i) the funds and management companies listed on Schedule 1 attached to Dkt. 2815, and (ii) Wilmington Savings Fund Society FSB, respectfully request that this Court certify for direct review by the United States Court of Appeals for the Fifth Circuit their appeal of this Court's Final Order Resolving Lien-Related Litigation [Dkt. 2809] (the "Final Order," attached hereto as **Exhibit A**), and the accompanying August 3, 2023 Memorandum Opinion [Dkt. 2808] (the "August 3, 2023 Opinion," attached hereto as **Exhibit B**) including all interlocutory orders, opinions, judgments, and decrees that that have merged therein, including all orders, opinions, judgments, and decrees entered in connection with Phases 1, 2, or 3 of the Lien-Related Litigation.[2]

Appellants' request is properly directed to this Court. Under Rule 8006, which governs direct review, "[o]nly the court where the matter is pending, as provided in subdivision (b), may certify a direct review." Fed. R. Bankr. P. 8006(d). Subdivision (b) provides that "[f]or purposes of this rule, a matter remains pending in the bankruptcy court for 30 days after the effective date under Rule 8002 of the first notice of appeal from the judgment, order, or decree for which direct review is sought." Fed. R. Bankr. P 8006(b). Appellants filed a notice of appeal on August 11, 2023 [Dkt. 2815] and an amended notice of appeal on August 17, 2023 [Dkt. 2837]. On August 17, 2023, however, Appellee Lien-Related Litigation Creditor Representative ("CR") filed a timely motion under Bankruptcy Rule 9023 seeking, inter alia, to alter or amend the Court's judgment [Dkt. 2835]. On August 21, 2023, this Court entered an order [Dkt. 2841] denying the CR's motion and declining "to amend or clarify its order." As a result of that denial, Appellants' notice of appeal and amended notice of appeal became effective on August 21, 2023. *See* Fed. R.

[2] Appellants' Notice of Appeal identified the following interlocutory decisions, without limitation: the January 11, 2023 Memorandum Opinion [Dkt. 2627] (attached hereto as Exhibit C); the July 22, 2022 Memorandum Opinion [Dkt. 2501] (attached hereto as Exhibit D); the March 9, 2021 Order Resolving Phase 2 of the Lien-Related Litigation [Dkt. 1848] (attached hereto as Exhibit E); the accompanying March 9, 2021 Memorandum Opinion [Dkt. 1847] (attached hereto as Exhibit F); the Court's rulings on the record at the August 14, 2020 hearing resolving Phase 1 [Dkt.1599] (attached hereto as Exhibit G).

Bankr. P. 8002(b)(1)(B), (2). Thus, this matter remains pending in this Court for purposes of Rule 8006, and this Court may certify the appeal for direct review, until September 20, 2023.[3]

Counsel for Appellants has conferred with counsel for the CR, who stated that "[t]here are several motions pending before the bankruptcy court so we have not come to ground on a position" with respect to Appellants' request for certification of a direct appeal to the Fifth Circuit. Accordingly, it is unclear at this time whether the relief requested in this Motion will be opposed.

As explained below, this is a paradigmatic case warranting direct appeal to the Fifth Circuit under 28 U.S.C. § 158(d)(2). This Court's decision presents important issues of bankruptcy law as to which there is no controlling decision of the Fifth Circuit or of the Supreme Court. *See id.* § 158(d)(2)(A)(i). Appellate review of those issues will require the resolution of conflicting decisions. *See id.* § 158(d)(2)(A)(ii). And an immediate appeal to the Fifth Circuit will materially advance the progress of these bankruptcy proceedings. *See id.* § 158(d)(2)(A)(iii). This Court should therefore certify the appeal for direct review by the Fifth Circuit.

## BACKGROUND

This Court's decision in the Lien-Related Litigation resolves a dispute among the various creditor constituencies of reorganized debtor Mesquite Energy, Inc. (the "Company") regarding the distributions its creditors should receive based on the respective priorities of their claims.[4] Three creditor constituencies are involved in this dispute: (1) postpetition DIP Lenders; (2) prepetition Senior Secured Noteholders ("SSNs"); and (3) prepetition unsecured creditors. *See* Op., Dkt. 2808, at 2. The Company owed each group of creditors significantly more than the

[3] Because the 30-day period for this Court to enter a certification for direct review extends until September 20, 2023, Appellants believe that their Motion may be heard on regular notice. If the Court determines, however, that its consideration of the Motion would benefit from a longer period between the filing of any objections and the expiration of the 30-day period, Appellants would not object to the Court hearing their Motion on a more expedited schedule.

[4] This Background section seeks to provide the factual background "[n]ecessary to understand the question[s] presented." Fed. R. Bankr. P. 8006(f)(2)(A). A more detailed summary of the factual background is included in Appellants' motion for a stay pending appeal. *See* Dkt. 2816, at 3-11.

Company was ultimately worth at confirmation. *See id.* at 2, 13-14.

As postpetition lenders, the DIP Lenders held the senior-most liens on nearly all of the Company's property at confirmation. *See* Dkt. 865, Final DIP Order ¶¶ 9, 10. And the DIP Lenders were owed far more than all parties agreed (and the Court determined) the Company was then worth. *See* Op., Dkt. 2808, at 13-14. Nonetheless, a group of unsecured creditors claimed that the DIP Lenders' liens did not, in fact, extend to property that was subject to any avoided prepetition liens of the SSNs. This contention became the Lien-Related Litigation that is the subject of this appeal, in which the CR was authorized to pursue claims in the Debtors' Lien-Challenge Complaint (Dkt. 1026) as the unsecured creditors' representative. *See* Dkt. 1212, Plan § IV.N. To enable the Company to exit bankruptcy without first resolving this litigation, the parties agreed to a Plan that permitted the Company to emerge with the DIP Lenders holding 2 million shares of the then-existing stock, and with another 8 million reserved for issuance based on the results of the Lien-Related Litigation and other litigation, but in all events consistent with Section 1129(b) of the Bankruptcy Code (which requires that senior creditors be paid in full before any amounts can go to junior creditors). *See* Op., Dkt. 2808, at 14; Dkt. 1212, Plan §§ III.C.3(b)(i)-(ii).

During the course of the Lien-Related Litigation, the Court concluded that the DIP Lenders' liens extended to substantially all of the Company's assets at confirmation, including assets subject to avoided prepetition SSN liens. *See* Dkt. 2501, at 14-15. But the unsecured creditors shifted tactics and began arguing that they could recover "value" for their avoidance action, even though the SSNs' liens they were trying to avoid were completely and permanently worthless—and had already been returned to the Company under the Plan.

Ultimately, the Court awarded "value" to the CR on account of the SSNs' liens, based upon the Court's estimate of the liens' pre-bankruptcy value at the time of the transfer. *See* Op., Dkt. 2808, at 29, 37-49. The Court reached that conclusion even though the avoided liens did not allow

the SSNs to receive any recovery on the claims they secured. Rather, as all agreed, the liens were worthless to the SSNs because they were second-position to the DIP Lenders' liens and the agreed-to equity value of the Company at the time of confirmation ($85 million) was less that the amount owed to the DIP Lenders ($100 million plus unpaid interest) who held the first-position liens. *See* Op., Dkt. 2808, at 14, 23, 25.

In light of this, the DIP Lenders believe that the Court's decision raises at least[5] three key legal questions which would benefit from immediate Fifth Circuit review: *First,* the Court's decision raises the legal question whether the purported transfer of nonposessory liens is an avoidable preference under 11 U.S.C. § 547(b)(5) if the liens do not enable the lienholder to receive *any* distributions on their prepetition secured claims. *See* Op., Dkt. 2808, at 14, 23. *Second,* the Court's decision raises the legal question whether value can be awarded under 11 U.S.C. § 550 when that remedy is not required to restore any financial loss that the transfer caused to the estate. *See* Op., Dkt. 2808, at 27-28. *Third,* the Court's decision raises the legal question whether the estate may recover the value of liens under 11 U.S.C. § 550 even though the estate already recovered the liens themselves. *See* Op., Dkt. 2808, at 31-32.

**QUESTIONS PRESENTED FOR DIRECT REVIEW**

1. Whether the transfer of a nonpossessory lien that does not actually enable the transferee creditor to receive any distribution on account of its prepetition claim can be avoided as

[5] As discussed in Appellant's motion for a stay pending appeal, there are several other legal issues that would benefit from immediate Fifth Circuit review given their conflict with other decisions and the absence of binding Fifth Circuit authority. *See generally* Dkt. 2816. The three issues highlighted here, however, provide ample basis for direct review. Under 28 U.S.C. § 158(d)(2), the jurisdiction of the court of appeals extends to the entire "judgment, order, or decree" that is certified for direct review so long as it "involves" at least one certifiable question. 28 U.S.C. § 158(d)(2)(A)(i)-(ii). Thus, the presence of a single certifiable issue amply supports direct review of the "entire [judgment] subject to this appeal." *In re Maxus Energy Corp.*, 49 F.4th 223, 228 (3d Cir. 2022); *see also In re Ultra Petroleum Corp.*, 2017 WL 4863015, at *5 (Bankr. S.D. Tex. Oct. 26, 2017) (Isgur, J.) (observing that "Section 158(d) is disjunctive," and certifying appeal for direct review based on lack of controlling authority as to one issue presented, without considering additional issues). For that reason, this Motion focuses on three issues that clearly demonstrate the propriety of direct review. For the avoidance of doubt, Appellants expect to present additional issues and arguments in their merits briefing on appeal.

a preference under 11 U.S.C. § 547.

2. Whether 11 U.S.C. § 550(a) authorizes an award of value based on the transfer of a nonpossessory lien when an award of value is not required to restore any loss to the estate caused by the transfer.

3. Whether 11 U.S.C. § 550(a) and (d) preclude an award of the value of a nonpossessory lien that has already been returned to the estate, such that the estate would recover both the lien and its purported value.

**RELIEF SOUGHT**

This Motion seeks certification of Appellants' appeal for direct review. The underlying appeal seeks reversal of this Court's Final Order.

**ARGUMENT**

Congress authorized direct appeals of bankruptcy court decisions under 28 U.S.C. § 158(d)(2) in order "to expedite appeals in significant cases and to generate binding appellate precedent in bankruptcy," where case law "has been plagued by indeterminacy." *In re Pacific Lumber Co.*, 584 F.3d 229, 241-42 (5th Cir. 2009). To that end, Section 158(d)(2) permits direct review of a bankruptcy court's decision if the bankruptcy court certifies the decision and the court of appeals authorizes direct appeal. The bankruptcy court "shall" certify its decision for direct review if it concludes (i) that "the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance"; (ii) that "the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions"; or (iii) that "an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken." 28 U.S.C. § 158(d)(2)(A)(i)-(iii). Only one of those conditions needs to be satisfied for the bankruptcy court to certify the order for direct review.

*See, e.g.*, *In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012).

The statutory criteria for direct review are readily satisfied in this case. This appeal presents multiple issues of bankruptcy law that have not been definitively resolved by the Fifth Circuit or the Supreme Court, and which this Court resolved in conflict with the decisions of other courts. Moreover, an immediate appeal is likely to advance a final decision on the issues presented in this litigation and will thus lead more expeditiously to a final resolution of the broader bankruptcy proceedings. The presence of any of these factors would independently justify an immediate appeal to the Fifth Circuit. Because they are *all* present in this case, certification of the appeal for direct review is plainly warranted.

### A. The Appeal Presents Multiple Issues Warranting Direct Review By The Fifth Circuit

Certification for direct review is warranted, first and foremost, because the appeal presents several important legal issues as to which there is no controlling decision of the Fifth Circuit or the Supreme Court, *see* 28 U.S.C. § 158(d)(2)(A)(i), and that will require the resolution of conflicting decisions, *see id.* § 158(d)(2)(A)(ii).

*First*, this appeal presents the question whether a transfer of a nonpossessory lien that does not actually enable the transferee to receive any distribution on account of its prepetition claim can be avoided as a preference under 11 U.S.C. § 547. Here, it is undisputed that, after filing the Correction Affidavits, the SSNs *received no payment* on account of their claims, as the Court recognized. Op., Dkt. 2808, at 20; *see* Dkt. 1212, Plan § III.C.4; *see also* Dkt. 2720, Hearing Tr., Day 2, 173:15-18 (Fischel). The Court nonetheless determined that the filing of the Correction Affidavits "enable[d]" the SSNs "to receive more than such creditor[s] would receive if" the case proceeded under Chapter 7 and the transfer had not occurred. 11 U.S.C. § 547(b)(5). In the Court's view, that condition was satisfied because the SSNs could *hypothetically* have received more in a

Chapter 7 liquidation conducted on the petition date with the HHK Liens than they would have in a liquidation without the HHK Liens. *See* Op., Dkt. 2808, at 21-23.

No controlling decision of the Fifth Circuit or Supreme Court dictated the Court's conclusion that the actual, known effects of an alleged preferential transfer may be disregarded. Although the Court relied heavily on *In re Tusa-Expo Holdings, Inc.*, 811 F.3d 786 (5th Cir. 2016), that case involved a prepetition transfer of *cash* that actually enabled the transferee to receive some payment on its claim. *See id.* at 790. Thus, the Fifth Circuit did not confront—and certainly did not resolve—the question presented here: whether the prepetition transfer of a non-possessory lien that actually turns out to be worthless and produces *no recovery at all at any time* on a creditor's antecedent debt claim can nevertheless "enable[]" that creditor to "receive more" than the creditor "would receive" in a liquidation absent the transfer. 11 U.S.C. § 547(b)(5).[6] The same is true of the other decisions of the Fifth Circuit and Supreme Court that this Court cited. *See Palmer Clay Prods. Co. v. Brown*, 297 U.S. 227, 227-29 (1936) (creditor received cash payments that reduced its claim); *In re Abramson*, 715 F.2d 934, 936 (5th Cir. 1983) (property immediately sold for cash and reduced claim). Thus, this is an issue of first impression in this circuit, of the sort that is particularly suited for direct review under Section 158(d)(2). *See, e.g.*, *In re Lively*, 717 F.3d 406, 407 (5th Cir. 2013) (hearing direct appeal "to resolve a question of first impression in this circuit").[7]

[6] In addition, *Tusa-Expo Holdings* is not controlling authority on this issue for at least one other reason: Although the Fifth Circuit referred to a test that "considered a hypothetical Chapter 7 liquidation in which the creditor retains the disputed transfers," 811 F.2d at 792, the Fifth Circuit's decision did not apply such a test, but rather rested upon the more abbreviated "*El Paso Refinery* analysis," *id.* at 801.

[7] More broadly, this Court's decision is inconsistent with the principle, reflected in decisions of the Fifth Circuit, that the focus of preference claims is not improvement in position, but rather depletion of the estate, which does not occur for purposes of a non-possessory lien until the lien is enforced to obtain recovery on a claim. *See, e.g.*, *In re Clark Pipe & Supply Co.*, *Inc*., 893 F.2d 693, 696 n.3 (5th Cir. 1990) (improvement in position, standing alone, does not establish a preferential transfer—the transfer must be "to the prejudice of other creditors holding unsecured claims. . . ." (internal quotation marks omitted)); *In re Ramba, Inc.*, 437 F.3d 457, 460 (5th Cir. 2006) ("[A] voidable preference must have depleted the estate."). With that said, the Fifth Circuit has not yet applied that principle to a case like this one, where a preference claim is based on the transfer of liens that become worthless and do not actually

Direct review is particularly appropriate because this Court's decision conflicts with the only circuit-level decision that that has confronted this question. In *In re Broumas*, 135 F.3d 769, 1998 WL 77842 (4th Cir. 1998), the Fourth Circuit held that where, as in this case, liens have become "completely and permanently worthless . . . they [cannot] be used to improve the [lienholder's] position among the creditors of the Debtors' bankruptcy estate" and thus cannot be avoidable preferences. *Id.* at *4. In that case, just like in this one, the encumbered property was valuable enough to secure the lienholder's claim when the liens were transferred pre-bankruptcy, but the value of the encumbered property declined, and the lienholder obtained no recovery from the liens upon foreclosure after the petition date. *Id.* at *1, *3. Noting that nonpossessory liens only *secure* a debt (but are not *payment* of a debt), the court concluded that liens that do not and will not afford the lienholder any recovery on its claims cannot be preferences under Section 547(b)(5). *See id.* at *4. The conflict between this Court's decision and the Fourth Circuit's thus furnishes an additional basis for certification.[8]

*Second*, the appeal presents the question whether 11 U.S.C. § 550(a) authorizes an award of value when the preferential transfer of a nonpossessory lien did not and will not deprive the estate of any value because it was never exercised to take anything from the debtor and did not otherwise interfere with the debtors' use or disposition of the encumbered property. In this case, even assuming that the filing of the Correction Affidavits was an avoidable preference, the Court

enable the creditor to recover anything on account of its prepetition claim.

[8] This Court sought to distinguish *In re Broumas* on the ground that it was a case under Chapter 7, whereas this is a Chapter 11 case. *See* Op., Dkt. 2808, at 25. But the Court did not explain why that difference would bear on the proper interpretation of Section 547(b)(5), and there is no apparent reason why that would be true. The Court also suggested that a (temporary) improvement in position from the Correction Affidavits benefitted the SSNs "in the DIP financing." *Id.* But that conclusion is belied by the trial record (*see* Dkt. 2786, at 17-21) and this Court's order approving the DIP financing (Dkt. 865, at ¶¶ J, 5(g)), and in any event it would not establish that the Correction Affidavits enabled the SSNs to obtain recovery on account of their prepetition secured claims. Appellants are aware of no other decision holding, as the Court did here, that a lender's recovery on a court-approved, new-money DIP loan is relevant to measuring the effect or value of an alleged preferential transfer on account of a prepetition antecedent debt.

did not suggest that awarding the purported value of the liens was necessary to remedy any loss to the estate caused by this transfer of non-possessory (and never-enforced) liens. To the contrary, the Court concluded that "the value to be awarded under § 550" does not "focus on what the estate lost." Op., Dkt. 2808, at 28. And it thus awarded value under Section 550(a) based on its estimate of the value of how much the liens benefitted the SSNs at the time of the transfer even though the transfer of the liens admittedly did not cause the estate to lose this estimated value. *Id.* at 29.

As with the first question presented, the Court did not identify any controlling decision of the Fifth Circuit or the Supreme Court holding that an award of value is available when that remedy is not required to restore any financial loss that an avoidable transfer caused to the estate. This Court's decision of law also conflicts with decisions of multiple other courts holding that an award of value under Section 550(a) should focus on restoring any financial loss that the transfer caused. *In re Trout*, 609 F.3d 1106, 1112 (10th Cir. 2010) ("Bankruptcy courts have consistently held that 11 U.S.C. § 550 is designed to restore the estate to the financial condition that would have existed had the transfer never occurred." (citation omitted)); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1267 (10th Cir. 2004) ("[T]he proper focus in [§ 550(a)] actions is *not on what the transferee gained* by the transaction, but *rather on what the bankruptcy estate lost* as a result of the transfer." (emphasis added; citation omitted)); *see also* 5 Collier on Bankruptcy § 550.02 (16th ed. 2023) ("The intent of section 550, as enacted, is to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.").[9] And the Court's resolution of this question conflicts with multiple decisions holding that avoiding a nonpossessory lien and preserving it for the benefit of the estate suffices to return the estate to its pre-transfer position, thus obviating any

[9] *See also, e.g.*, *In re Pearlman*, 515 B.R. 887, 898 (Bankr. M.D. Fla. 2014) (benefit to the transferee is "immaterial" because the statute focuses "exclusively on loss to the bankruptcy estate"); *In re C.W. Mining Co.*, 465 B.R. 226, 234 (Bankr. D. Utah 2011), *aff'd*, 477 B.R. 176 (B.A.P. 10th Cir. 2012), *aff'd*, 749 F.3d 895 (10th Cir. 2014) (focusing on the transferee's gains and taking more from a transferee than the estate lost amounts to "a 'penological theory' of the Bankruptcy Code, which must be rejected").

basis for an award of value under Section 550(a). *See, e.g.*, *Trout*, 609 F.3d at 1112 (returning nonpossesory lien, rather than awarding its higher pre-bankruptcy value, was the appropriate remedy where existence of the lien did not lead to diminution in collateral's value); *Broumas*, 1998 WL 77842, at *6 (award of value based on never-enforced lien would result in impermissible "windfall" to estate).[10] Thus, the second question presented also warrants certification for direct review.

*Third*, the appeal presents the question whether 11 U.S.C. § 550(a) and (d) preclude an award of the value of a nonpossessory lien that has already been returned to the estate. The Court determined that, although the HHK Liens were returned under the Plan, an award of the value that the Court attributed to the HHK Liens was warranted to "put Sanchez's estate back in the pre-transfer position." Op., Dkt. 2808, at 31. That decision conflicts with the Fifth Circuit's holding that "[p]roperty that has already been returned cannot be 'recovered' in any meaningful sense," and that once "transferred property has been returned, the bankruptcy trustee cannot 'recover' it again using § 550(a)," and with the Fifth Circuit's independent holding that Section 550(d) precludes the recovery of both transferred property and its value. *In re Deberry*, 945 F.3d 943, 947 (5th Cir. 2019). Numerous other decisions have reached the same result, holding that the estate cannot obtain the value of a lien under Section 550(a) after recovering the lien itself. *See, e.g.*, *In re William*, No. 15-55766-BEM, 2020 WL 7137327, at *5 (Bankr. N.D. Ga. Dec. 4, 2020); *In re Sickels*, 392 B.R. 423, 427 (Bankr. N.D. Iowa 2008); *In re Vondall*, 352 B.R. 193, 200 (Bankr. D. Minn. 2006), *aff'd*, 364 B.R. 668 (B.A.P. 8th Cir. 2007), *aff'd*, 279 F. App'x 415 (8th Cir. 2008);

[10] *See also, e.g.*, *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 573 (Bankr. S.D.N.Y. 2016) ("[T]he case law indicates that a remedy of monetary damages equal to the diminution in value of property securing an avoidable lien may only be appropriate when such property was transferred beyond the debtor's control."); *In re Brooks*, 452 B.R. 809, 817 (Bankr. D. Kan. 2011) ("Only when the collateral has already been realized upon, or it is unrecoverable for some reason, should the court consider an award of its value as opposed to the mere preservation of the lien."); *In re Farmer*, 209 B.R. 1022, 1025 (Bankr. M.D. Ga. 1997) ("In this case, voiding of the lien serves the purpose of returning the 'property' to its pretransfer status, *i.e.*, no lien before the transfer; no lien after the avoidance.").

*In re Brooks*, 452 B.R. 809, 816-17 (Bankr. D. Kan. 2011).

The Court appeared to conclude that the particular circumstances of this case justified an exception to the ordinary, well-settled rule preventing the estate from recovering both transferred property and its value. *See* Op., Dkt. 2808, at 31-32. But the Court did not identify any decision of the Fifth Circuit or the Supreme Court (or, indeed, any court) finding an exception to Section 550(a) and (d)'s prohibition on the recovery of both the property and its value, let alone finding that that the circumstances of this case could justify any such exception. *See id.* Thus, even if the Court's resolution of the third question presented were not in clear conflict with the Fifth Circuit's decision in *Deberry*, the Court's analysis would at most demonstrate that this is another question on which there is no controlling decision of the Fifth Circuit or the Supreme Court. That conclusion, in turn, reinforces the appropriateness of direct review in this case.

**B. An Immediate Appeal Will Materially Advance The Progress Of This Case**

Certification of the appeal for direct review is also warranted because "an immediate appeal . . . may materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A)(iii). As an initial matter, the financial stakes of this dispute mean that there is no reasonable prospect that it will be resolved with finality without an appeal to the Fifth Circuit. Thus, requiring the parties to appeal first to the district court, followed by de novo review by the Fifth Circuit, would only waste the resources of the parties and the district court—while prolonging uncertainty on the important issues of bankruptcy law implicated in this case.

Critically, this is not a case in which "percolation through the district court would cast more light on the issue[s]" prior to review by the Fifth Circuit. *Weber v. United States*, 484 F.3d 154, 161 (2d Cir. 2007). Although the Lien-Related Litigation has been protracted, the trial portion of the proceedings spanned only three days, and Appellants' anticipate that their appellate arguments will largely turn on pure issues of law and the undisputed factual record. Moreover, years of "hard-

fought litigation between sophisticated parties" (Op., Dkt. 2808, at 1) have fully aired the pertinent issues. An intermediate decision by the district court would thus be unlikely to facilitate the Fifth Circuit's ultimate review.

Finally, a prompt decision by the Fifth Circuit would be particularly beneficial given the nature of the dispute in this case, which involves the allocation of ownership interests in the Reorganized Debtors. Certainty on this key issue is a necessary predicate to bringing a final resolution to these long-running bankruptcy proceedings, which recently reached their fourth anniversary. Certification of a direct appeal to the Fifth Circuit is therefore warranted.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that the Court certify their appeal for direct review by the United States Court of Appeals for the Fifth Circuit.

Dated: August 22, 2023
Houston, Texas

Respectfully submitted,

*/s/ James A. Reeder, Jr.*

**JONES DAY**
James A. Reeder, Jr. (TBN 16695010)
Jonathan L. Marsh (TBN 24035622)
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: 832-239-3939
Facsimile: 832-239-3600
E-mail: jareeder@jonesday.com
jmarsh@jonesday.com

-and-

Bruce S. Bennett
555 South Flower St.
Fiftieth Floor
Los Angeles, CA 90071
Telephone: 213-489-3939
Facsimile: 213-243-2539
E-mail: bbennett@jonesday.com
(Admitted *pro hac vice*)

-and-

Christopher J. DiPompeo
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: 202-879-7686
Facsimile: 202-626-1700
E-mail: cdipompeo@jonesday.com
(Admitted *pro hac vice*)

*Counsel for the Ad Hoc Group of Senior Secured Noteholders and DIP Lenders*

*/s/ Jennifer J. Hardy*

**WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy (Texas Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Facsimile: (713) 510-1799

-and-

Dennis L. Jenkins (admitted *pro hac vice*)
Brett H. Miller (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

-and-

Alexander L. Cheney (admitted *pro hac vice*)
Jonathan Patchen (admitted *pro hac vice*)
Jennifer S. Maybee (admitted *pro hac vice*)
One Front Street
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Counsel for the Ad Hoc Group of Senior Secured Noteholders and DIP Lenders*

*/s/ Daniel F.X. Geoghan*

**COLE SCHOTZ P.C.**
Daniel F.X. Geoghan (Texas Bar No. 24126280)
James Walker
901 Main Street, Suite 4120
Dallas, Texas 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-0361

-and-

**MCDERMOTT WILL & EMERY LLP**
Jonathan I. Levine (admitted *pro hac vice*)
Joel Haims (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

-and-

**MCDERMOTT WILL & EMERY LLP**
Charles R. Gibbs (Texas Bar No. 07846300)
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
Telephone: (713) 653-1700
Facsimile: (972) 232-3098

*Counsel for Wilmington Savings Fund Society, FSB*

**CERTIFICATE OF SERVICE**

I certify that on August 22, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ James A. Reeder, Jr.*
James A. Reeder, Jr.